CITY OF ST. LOUIS, TO USE OF BERNARD MURPHY, Respondent, *v.* JAMES CLEMENS, JR., *et al.*, Appellants.

1. *St. Louis, City of — Charter — District Sewers, ordinance concerning — Engineer, delegation of power to.*— Section 16, chapter 8, of an act entitled "An act to revise the city charter of the city of St. Louis," approved March 19, 1866 (Sess. Acts 1865-6, pp. 297-8), giving the city council power to construct district sewers, provides that "such sewers shall be of such dimensions as may be prescribed by ordinance." *Held*, that ordinance 5875, providing that a sewer therein authorized to be constructed on the premises of appellant should be "of such dimensions and of such materials as may be deemed requisite by the city engineer," was not in legal conformity with said provision of the charter, and should be disregarded. The city council cannot delegate a duty plainly and expressly devolved upon them to the mere discretion and caprice of a single individual.

2. *Charter — Corporations, acts of must be performed comformably to requirements of charter.*— The rule is well settled that corporations are the mere creatures of the law, established for special purposes, and deriving all their powers from the acts creating them. The corporate acts must not only be authorized by the charter, but these acts must be done by such officers or agents, and in such manner, as the charter directs.

*Appeal from St. Louis Circuit Court.*

This suit was brought on a special tax bill for building a sewer in block No. 1686 of the city of St. Louis. The lot of ground sought to be charged is described as constituting a part of West Camp Spring Sewer District No. 11, as established by city ordinance No. 5875, passed, as alleged, in pursuance of the city charter and an act of the General Assembly approved March 19, 1866.

The petition alleges that Bernard Murphy, under a contract with the city, did the work and furnished the materials, at the cost of $9,798.65 ; that the proportion chargeable to the lot in question, according to the city engineer's assessment, was $114.21, and for which judgment was prayed.

The defendants, in their answer, deny among other things the legality of ordinance 5875, or that it was passed in accordance with the provisions of the city charter.

The defendants then asked the following, among other instructions, which were refused by the court :

1. The power to establish sewer districts and to construct public sewers in the city of St. Louis is a..trust delegated to the city as a municipal corporation, and which said corporation can not delegate to other parties or persons. If, therefore, ordinance No. 5875, purporting to be an ordinance " to establish West Camp Spring Sewer District No. 11, and to provide for the construction of sewers therein," failed to prescribe the dimensions of the sewers to be built in said district, but left the same to the discretion of the city engineer, said ordinance was illegal and void, and plaintiff cannot recover for work done under the same.

2. The city of St. Louis, as a municipal corporation, must act strictly within the power conferred by its charter ; and if, in establishing or constructing the sewer in question, the said corporation, its agents, or servants, failed to conform to the provisions of its charter, or exceeded the power therein conferred, then said defendant is not liable for the construction of said sewer, and the plaintiff cannot recover in this action.

Judgment was found for plaintiff for the amount of tax bill and interest, and the case comes here by appeal.

*A. S. Gardner*, for appellants.

I. The powers of a corporation are limited by its charter—as much limited and restricted to the mode prescribed by the statute as to the thing allowed to be done. ( Brady v. The Mayor of New York, 7 Abb. Pr. R. 234, 244 ; Farmers' Loan & Trust Co. v. Carroll, 5 Barb. 649.)

II. The power conferred on the city to establish and construct district sewers, with the proviso that the dimensions of the sewers shall be prescribed by ordinance, cannot be delegated to the city engineer or any other person. The city council may designate the officers by whom the work shall be done; but the dimensions and the manner must, under the provisions of the charter, be prescribed by ordinance. (City of Baltimore v. Porter, 18 Md. 284.)

III. The power delegated by the State to the corporation to construct sewers is an important trust, not subject to be delegated by it to any person whomsoever. Nothing short of the most positive language can justify the court in holding that the Legislature intended any such delegation of power. The language of the statute clearly expresses the intention of the Legislature in confining the exercise of this power of constructing sewers, at least so far as the dimensions are concerned, to the common council, the members of which are elected by and are responsible to those whose property they are allowed to tax to pay for same. (Thompson v. Schermerhorn, 2 Seld., N. Y., 92 ; City of Oakland v. Corporation, 13 Cal. 540.)

IV. The city has no power to construct sewers, except such as is derived from its charter, and it must proceed in accordance therewith. When a grant of power from a State is relied upon (as in this case), that grant must be strictly pursued within the limits of the act conferring the grant of power. (City of Leavenworth v. Rankin, 2 Kansas, 357, 371 ; Hann. & St. Jo. R.R. v. Marion County, 36 Mo. 294; City of Leavenworth v. Norton, 1 Kansas, 432 ; 2 Kent's Com. 296–8 ; City of St. Paul v.

26—VOL. XLIII.

Laidler, 2 Minn. 203 ; Willcock on Municipal Corporations, 12 Law Library, 54.)

V. This is one of those cases in which public improvements are allowed to take private property without the consent of the owner. It is a grant of power to the corporation in derogation of the rights of the citizen, and ought to be strictly construed. The form of the statute was intended to protect private rights from public oppression, and the courts cannot allow any essential departure from this form without jeopardizing those rights—which have no adequate protection except in the courts. (In the matter of Flatbush Avenue v. The City of Brooklyn, 1 Barb. 286 ; Sharp v. Spier, 4 Hill, 76.)

*Thomas S. Grace,* for respondent.

I. Four of the instructions asked by the appellants and refused by the court are predicated upon the assumption that by the charter it is made a condition precedent of the power of the council to order the sewer in question to be built by the engineer that the council should itself, by ordinance, first prescribe the dimensions of the sewer. The first duty imposed by the Legislature on the city council is to establish by ordinance the limits and bounds of each sewer district. (Sess. Acts 1866, p. 297.) This is a condition precedent, for the reason that each lot of ground within the district is to be assessed with the cost of constructing the sewer in proportion to the whole area of the whole district ; and in order to ascertain what proportion of the cost of the whole sewer should be assessed against each lot of ground, it is essential that the limits and bounds of the district should first be established.

II. But it is not made a condition precedent of the power of the council to cause a district sewer to be built, whether on the petition of the property-holders or of its own motion, that the council should first prescribe the dimensions of the sewer by ordinance ; because, if it were, the charter would further require that any change, enlargement, or extension of the sewer which might be required should also be first made by ordinance, and the law does not so require. Ordinance 5875 was not intended as a protec-

City of St. Louis, to use of Murphy, v. Clemens, Jr.

tion to the property-holders against being assessed for a more expensive sewer than should be absolutely necessary to drain its own district; neither was it for the purpose of having the sewer constructed at the least possible outlay. But it was intended for the purpose of enabling the city to establish an efficient sewer system; and in view of the discretion vested by the charter in the officer having charge of the construction of the sewer to change, enlarge, or extend the same, as might be required, it was competent for the council to give the engineer authority to determine, in the first instance, the dimensions of this particular sewer, to make it serviceable in its particular locality.

III. The words of the statute "may be prescribed by ordinance" import liberty, permission, license. They are not imperative or mandatory on the council; they ought rather to be construed as a reservation of power to the council, to be exercised or not, at its pleasure. (State *ex rel*. Kyger v. Holt County Court, 39 Mo. 523; Cutter v. Howard, 9 Wis. 311; Wheeler v. Chicago, 24 Ill. 105.) In the case of Doughty v. Hope, 3 Denio, 249, it was held that, although the estimate and assessment for a public improvement in the city of New York, by a just construction of the statute (2 R. L. 407, §§ 175, 176), should be made by the commissioners before the execution of the work, yet the statute is in that respect directory to the corporation, and the omission to pursue it did not invalidate the assessment. (Approved in Wetmore v. Campbell, 2 Sandf. 341; Maurice v. Mayor of New York, 8 N. Y. 120; Laimbeer v. Mayor of New York, 4 Sandf. 109.) It is provided in the seventh section of the charter of the city of New York (statute of 1830, p. 126) that the ayes and noes shall be called and published whenever a vote of the common council shall be taken on any proposed improvement involving a tax or assessment upon the citizens. The language is imperative; the ayes and noes *shall* be called. *Held*, that the provision is merely directory. (Striker v. Kelly, 7 Hill, 24.) In the charter of New York city (2 R. L. 1813, p. 407, § 175) it is provided that it shall be lawful for the mayor, aldermen, and commonalty to cause common sewers to be made; to order and direct the pitching and paving of the

streets; and to cause estimates of the expense of conforming to such regulations to be made, and a just and equitable assessment thereof among the owners or occupants of all the houses and lots intended to be benefited thereby, in proportion, as nearly as may be, to the advantage which each shall be deemed to acquire; and to appoint such skillful persons as they may think proper to make the estimate and assessment. Now, under that act, the mayor, aldermen, and commonalty did not declare what owners or occupants of houses and lots were intended to be benefited; they did not fix the limits of the district to be assessed, but delegated the discretion to the assessors appointed to make the assessment, to determine who the persons were who were benefited, and gave them power to fix the limits of the assessment district. *Held*, that a confirmation of the report of the assessors was a substantial compliance with the requirement. (Maurice v. Mayor of New York, 8 N. Y., 4 Seld., 120; Laimbeer v. Mayor of New York, 4 Sandf. 109; Wetmore v. Campbell, 2 Sandf. 341.)

IV. It cannot be said in this case that the appellants had a legal right to insist that the council should itself prescribe the dimensions of this particular sewer, nor had they a right *de jure* to insist that the sewer in question should be of any given dimensions. (Wilson v. City of New York, 1 Denio, 600.) They have the right to insist that the council shall, by ordinance, determine the necessity of the sewer, and the size of the sewer district, which is the basis to determine the amount of each property-holder's assessment; but they cannot also insist that the council must determine, by ordinance, the material to be used, the dimensions and general character of the work proposed to be done. In the materials to be used and the dimensions of the work, the appellants are only incidentally interested. (Columbia Bottom Levee Co. v. Meier, 39 Mo. 58.) The dimensions of the sewer were never regarded by the Legislature as the basis to determine the amount of assessment against each property-holder. (See "An act to provide a general system of sewerage in the city of St. Louis," approved March 12, 1849 — Sess. Acts 1849, p. 519.) The depth of the sewer below the bed of

the street, and the materials of which the sewer is built, enhance the cost of the sewer more than an enlargement of the dimensions. If, therefore, the Legislature intended to restrain the engineer from building too large a sewer, why not also restrain him from building the sewer with too costly material, as with cut stone, or from sinking the sewer too deep below the street? both of which powers, if abused by the engineer, would enhance the cost much more than a small enlargement of the dimensions of the sewer. The engineer is recognized by the Legislature as a charter officer — the officer who shall have charge of the construction of district sewers ; who shall compute the cost and make the assessments. And the Legislature, in providing that "such sewers may be changed, enlarged, or extended, and shall have all the necessary laterals, inlets, and other appurtenances which may be required," without requiring the council to determine by ordinance what changes, enlargements, or extensions should be required, or what should be considered necessary laterals, necessary inlets, or other necessary appurtenances, must be understood as referring the determination of these matters to the judgment of the engineer, aided by personal observation upon the ground and a knowledge of the obstructions to be overcome.

V. The sewer system as it now exists was inaugurated in March, 1859, by an act of the Legislature entitled "An act amendatory of and supplementary to the several acts incorporating the city of St. Louis," approved March 14, 1859. (Sess. Acts 1859, p. 165 ; § 14, p. 168.) The provision in question in this act is, "such sewers shall be *made* of such dimensions as may be prescribed by ordinance, and may be changed, enlarged, or extended, etc." In the case of The City to the use of Creamer v. Oeters, decided in 1865, 36 Mo. 456, the court says : "It is objected by the defendant that the ordinance did not prescribe the dimensions of the sewer. The act gives the council power to prescribe the dimensions, and the ordinance authorizing the city engineer to construct the sewer gave him power to determine the dimensions of this particular sewer. It is not made a condition precedent either of the power of the council or of the authority of the engineer. We do not see that this objection can be of

any avail to the defendant." In March, 1866, the city charter was revised by the Legislature, by an act entitled "An act to revise the city charter of the city of St. Louis," approved March 19, 1866. (Sess. Acts 1866, p. 279.) At page 298 it is again enacted " such sewer shall be [the word " made" is dropped] of such dimensions as may be prescribed by ordinance, and may be changed, enlarged, or extended." On the 13th of March, 1867, the charter was revised again. (Sess. Acts 1867, p. 56.) At page 76 we find the same enactment in the words of the revision of 1866. Can it be contended that the Supreme Court did not rightly interpret the meaning of the act of 1859, in the case of The City v. Oeters, 36 Mo. 456, where we find that the Legislature had the opportunity twice afterward presented of correcting that interpretation by changing or amending the language of the law? So far from changing the words of the provision in question, the Legislature, in the revision of the charter in 1866, and again in 1867, dropped the word " made," the better to conform the law to the decision. Can it be said that the Legislature was not aware of the decision, and dropped the word " made" by chance? We think not, for the reason that the revision of the charter was conducted by eminent attorneys of this city, who were at the time members of the Legislature and familiar with this decision.

VI. It is contended that the corporation is as much limited and restricted to the mode prescribed as to the thing allowed to be done. This is true only where the public are interested in the mode of doing the thing as much as in the thing itself, and the mode is prescribed for the benefit or protection of the public.

VII. It is not doing justice to the merits of respondent's case to call his demand a tax, and then demand that the law shall be strictly construed against him. A tax is a burden imposed upon persons or property to raise money for public purposes; but an assessment is for improvements, and is not regarded as a burden, but as an equivalent or compensation for the enhanced value which the property of the person assessed has derived from the improvement. (Egyptian Levee Co. v. Hardin, 27 Mo. 495;

Columbia Bottom Levee Co. v. Meier, 39 Mo. 56.) Nor are the powers conferred on the corporation to build sewers properly said to be in derogation of the rights of the citizens, and that consequently the law must be strictly construed. The power to build is rather the exercise by the corporation, restrained and limited by law, in behalf of her citizens, of one of the inalienable rights of the citizen — the right to live, and breathe fresh air, and banish from the city the seeds of death and pestilence.

WAGNER, Judge, delivered the opinion of the court.

This case is brought before us for review on appeal from the St. Louis Circuit Court, wherein judgment was given for respondent. The action was on a special tax bill for building a sewer on the premises of appellants, and the defense set up was that the ordinance under which the sewer was constructed was void, and conferred no authority on the person doing the work. The charter of the city of St. Louis, from which the power for the proceeding is attempted to be derived, says:

"The city council shall cause sewers to be constructed in each district, whenever a majority of the property-holders resident thereon shall petition therefor, or whenever the city council may deem such sewer necessary for sanitary or other purposes; and such sewer shall be of such dimensions as may be prescribed by ordinance, and may be changed, enlarged, or extended, and shall have all the necessary laterals, inlets, and other appurtenances which may be required."

The ordinance authorizing the construction of the sewer provides that "said sewer shall be of such dimensions and of such materials as may be deemed requisite by the city engineer." The council took no action as to the dimensions of the sewer, but left the whole matter to the discretion of the engineer. The power was vested in the council for some purpose, we must suppose, and they had no power to delegate it. The council act under a sense of official responsibility, and are chosen on account of their fitness for the trust reposed in them, and their constituents have a right to require them to come up to the full measure of their duties. The law requires them to act not only in view of their direct

responsibility to those who elected them, but also that they should exercise their united wisdom for the general good of the public. They cannot delegate a duty plainly and expressly devolved upon them to the mere discretion, and perhaps caprice, of a single individual.

The case of Ruggles and Bixler v. Collier *et al.* is in point, and cannot be distinguished in principle from the present case.

The rule is well settled that corporations are the mere creatures of the law, established for special purposes, and deriving all their powers from the acts creating them. The corporate acts must not only be authorized by the charter, but these acts must be done by such officers or agents and in such manner as the charter directs. (2 Kent's Com. 360–61, 11th ed. ; Ang. & Ames on Corp. §§ 111, 271 ; Bank of Augusta v. Earle, 13 Pet. 587 ; Perrine v. Ches. & Del. Canal Company, 9 How. 172 ; Brady v. The Mayor, etc., 2 Bosw. 173, affirmed in 22 N. Y. 312 ; McSpedon v. The Mayor, etc., 7 Bosw. 601 ; Bard v Chamberlain, 3 Sandf. Ch. 32 ; Broughton v. Manchester Water Works, 3 Barn. & Ald. 11–12 ; McCullough v. Moss, 5 Denio, 566 ; Williams v Lash, 8 Minn. 496 ; School Directors v. Thompson, 5 Minn. 257 ; and authorities cited in opinion in Ruggles and Bixler v. Collier *et al.*, *ante*, p. 353.)

The ordinance conferring the authority on the engineer was not in legal conformity with the charter, and must be disregarded. But it is said that a different doctrine has been held in The City of St. Louis to use, etc., v. Oeters, 36 Mo. 456. The question did arise in that case, but it was disposed of in a single sentence, and it was not maturely considered. I am satisfied that the case should not be regarded as authority on this point ; and, so far as it asserts a principle contrary to what is herein laid down, it ought to be overruled.

The judgment will be reversed and the cause remanded. The other judges concur.