## SARAH B. BASSETT vs. THE CITY OF NEW HAVEN.

### SAME vs. SAME.

Third Judicial District, New Haven, June Term, 1903.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

An assessment of sewer benefits upon the abutting property-owners at a uniform sum per front foot is not necessarily illegal or unjust. Such a method ought not to be adopted arbitrarily nor applied without discrimination; but cases not infrequently exist in which the accruing benefits can be as accurately and satisfactorily determined by this rule as by any other. If the front-foot rule, so-called, is applied because, in the judgment and discretion of the assessing

Bassett v. New Haven.

authority, it will work substantial justice to all interests concerned, and the results reached under its application are in fact proportional and just, the abutting landowners have no cause of complaint.

About 1871 the defendant planned a general sewer system, estimated the probable cost of its construction, including main sewers, branches and outlets, and, upon the supposition that two thirds of this would be paid by abutting owners, divided that portion of the cost by the total frontage, obtaining $1.75 per front foot as a result. Since that time it has been the practice of the proper municipal authority, after hearing the parties interested and inspecting the premises, to accept and adopt these figures and lay the assessment accordingly, except in instances where from the character or situation of the property, or the nature of its use, the owners were not, in its judgment, benefited to so great an extent; and in such instances to exercise its judgment in determining the amount of the assessment. In the present case this practice was followed, and the figures as originally made were adopted by the assessing body. *Held* that there was nothing arbitrary or illegal in the method or manner of making the assessment appealed from, and inasmuch as the Superior Court had found that these respective amounts were in fact proportional and just, the assessments were properly confirmed.

The defendant's charter provides (12 Special Laws, p. 1150, § 135) that in estimating special benefits for the construction of a particular sewer, the cost of the main or trunk sewer, into or through which the particular sewer empties or is discharged, may be considered; but that the whole amount assessed as benefits shall in no case exceed the cost of the work or improvement (12 Special Laws, p. 1139, § 85). *Held* that under these provisions the aggregate amount assessed as benefits for a particular sewer might, in certain instances, exceed its cost.

The plaintiff contended that the assessments in question were in reality made by the board of compensation, and not by the court of common council as required by the city charter (12 Special Laws, p. 1150, § 135). *Held* that this assumption was negatived by the finding, inasmuch as the common council's adoption of the report of the board of compensation was in itself a sufficient exercise of the council's own judgment and discretion in the premises.

Argued June 3d—decided July 24th, 1903.

APPLICATIONS for relief from sewer assessments, brought to the Superior Court in New Haven County; facts found and judgments rendered confirming the assessment in each case (*Case, J.*), and appeals for alleged errors in the rulings of the court. *No error.*

*John K. Beach*, with whom was *John W. Bristol*, for the appellant (plaintiff).

*Leonard M. Daggett*, for the appellee (defendant).

PRENTICE, J. These two cases were tried below and argued before us together. As they involve substantially the same state of facts and the same questions of law, save in one minor particular, they may now be considered by us in a like manner.

In April, 1897, the court of common council of the defendant city, after compliance with the necessary preliminary action, awarded a contract for the construction of a sewer extending through Shelton Avenue and Ivy and Newhall streets, and connecting at the corner of Newhall and Division streets with a sewer already built, through which, and other laterals and mains, service to the outlet, two miles distant from Newhall Street, was obtained. The construction having been completed prior to May 31st, 1898, the assessment of benefits therefor was referred to the bureau of compensation. This board, after due notice and hearing, made its report. This report took the form of three reports, in which the assessments made against the abutting landowners upon the three streets through which the sewer extended were separated, each report dealing only with the assessments made against the landowners upon a single street. The applicant, being a landowner upon Shelton Avenue and Ivy Street, had assessments made against her in the reports involving those portions of the sewer. These reports were afterwards accepted by the court of common council, whereupon the applicant began these proceedings, praying that the several assessments made against her be annulled. The first case in the order of the docket grows out of the Ivy Street assessment; the second out of the Shelton Avenue assessment.

The total cost of the sewer was $16,288.81. The assessments along Shelton Avenue amounted to $5,733.36; along Ivy Street to $2,854.62; and along Newhall Street to $3,271.67; the total amount being $11,859.65.

By an apportionment, made at the time of the trial of the appeals in the Superior Court, of the cost of the sewer, which was an entire gross sum and so carried upon the books of the director of public works, it appeared that the cost of the Shelton Avenue portion of the sewer was $5,623.79.

All the assessments along the entire length of the sewer were made at the uniform rate of $1.75 per front foot, except that a 75-foot allowance was made upon one side of corner lots. At the corner of Shelton Avenue and Ivy Street this allowance was made on the Ivy Street side.

"About the year 1871, a general sewerage system was planned for the city of New Haven, in accordance with which plan the sewers in said city have since been constructed. At that time an estimate was made of the probable cost of the sewer system so planned, including main sewers, outlets, and lateral, or branch sewers, and such total estimated cost was divided into three equal parts. Upon the supposition that one of such third parts would be met by the city from general taxation, and that the other two thirds would be paid by the owners of property adjoining the streets in which such sewers might be constructed, the two thirds of such total estimated cost was divided by the total frontage of land in the city upon the streets in which sewers might be constructed, and the result thus obtained was approximately $1.75 per front foot. Said computation was made by the city engineer and by those by whom said general plan was devised, and said result, namely, $1.75 per front foot, was adopted by them as a guiding basis upon which assessments for sewers might be figured, in the expectation that, if the assessments were so figured, it would result in the city paying a third of the total cost of the sewerage system, the property-owners on one side of the street paying a third, and the owners on the other side a third.

"Since said plan was devised, and said computation made, it has been the practice for the department of public works, through the city engineer, to furnish to the board, or bureau of compensation, when about to make an assessment of benefits for a sewer, a map of the street, or streets, upon which

such sewer, or sewers, have been constructed, showing the names of those owning property on each side of such street or streets, and their respective frontages, and also showing in figures upon each of such lots what the amount of the assessment would be if it should be laid at the rate of $1.75 per front foot."

It has been the practice of the members of said bureau, " after hearing the parties interested, and after an inspection of the premises, to accept and adopt the computation so made by the city engineer, and lay the assessments accordingly, except in particular instances where, by reason of the situation of property, irregularity of dimensions, character of the property, or of its use, or other circumstances, the owners of such property were not, in the judgment of the bureau, benefited by the construction of a sewer as much as $1.75 per front foot, or to so great an extent as were the owners of property not presenting such unusual features. In such particular instances, it was the practice of the board to exercise its judgment in determining to what extent the owners of such property should be assessed."

This practice was followed in the making of the assessments in question, and the figures entered by the city engineer upon his map of the work as the result of his computations at the rate of $1.75 per front foot were, without change, adopted by the bureau of compensation as the assessments against the property-owners.

The applicant's property against which the assessments were laid is outlying, undeveloped property, and on the market for sale.

The appeals assign, as reasons therefor, the overruling of certain claims that the assessments in question were illegal and unauthorized, for substantially the following reasons : (1) that they were not laid in accordance with the city charter ; (2) that they were not laid with reference to special benefits received ; (3) that they were not proportional or reasonable parts of the expense of the work ; (4) that the authority laying them did not assess upon the applicant and the other landowners a proportional and reasonable part of

Bassett *v.* New Haven.

the expense of construction, and did not estimate the particular amount of such expense to be paid by them; (5) that the assessments were calculated as a proportional part of the estimated cost of the entire city sewer system, constructed and to be constructed; (6) that the assessments were not fixed with reference to the cost of the sewer in the street in question, but with reference to the total estimated cost of the whole city system; and (7) that the rule of assessment adopted was one of uniform assessment per front foot throughout the city.

These reasons relate in part to the manner of assessment, and in part to the results arrived at. In so far as they relate to the results, the finding effectually negatives them. It is distinctly found that the sewer in each street in fact benefited the land assessed to the amount of the assessment, and more; that the total amount assessed upon the owners of property upon the three streets was a proportional and reasonable part of the cost of construction of the sewer, and the total sum assessed upon the property-owners by each of the three reports likewise a proportional and reasonable part of the expense of said construction, and that the particular amount of such expense so estimated to be paid by the complainant upon such assessment was a reasonable and proportional part of the expense of the construction of said sewer. This finding conclusively disposes of any claim based upon a disproportionate and excessive assessment.

The results having thus been found to be correct ones, we have only to consider the objections urged as to the methods by which they were reached. These latter objections, as they are stated, naturally fall into two general groups, to wit: those which urge that the assessments were not made with reference to special benefits, and those which insist that they were not laid solely with regard to the particular public work in question. The charter provides that, in estimating the reasonable part of the expense of any sewer for the purposes of assessment, the cost of constructing any main or trunk sewer into and through which such other sewer is discharged may be taken into consideration. Save as the assessing

authority may have acted under this grant of power, the objections of the second form do not, in the present case, differ in principle from those of the first, and call for no separate discussion. Broadly stated, all the applicant's objections to the method of assessment resolve themselves into a single general objection, to the effect that the assessments in question were laid by the application of a front-foot rule determined upon and adopted arbitrarily and upon the basis of an entire city sewerage system, and not laid, as the charter clearly requires, upon the basis of special benefits received from the public work in question.

The fallacy of the argument in support of this contention exists in the assumptions of fact that are made. We look through the record in vain for support for the assumed proposition that the assessments were not in fact made with a sole regard for the special benefits deemed by the assessing authority to have accrued from the construction of the line of sewer which was the occasion of the assessment. A front-foot assessment was indeed made, but such assessments are not by any means necessarily inconsistent with an application of the special benefit rule. Common knowledge proves that not infrequently the front-foot rule furnishes as fair an expression of the proportionate benefits received as any other process. It is true that the bureau of compensation used as "a guiding basis" for their action a scheme long since worked out by others, and a schedule mathematically prepared according to such scheme. But it by no means appears that this scheme and schedule were adopted and applied arbitrarily, and without a preliminary finding that the special benefits would be fairly and justly apportioned in the situation in hand by their application. It is true, also, that this scheme was originally formulated with a regard for the entire proposed system of city sewerage and its estimated cost. That fact, however, has no significance, save as a tribute to the foresight of the originators of the scheme, if it appears that the results worked out by them, taking a broad view of the whole city situation, in fact accomplished in this particular instance what it was designed to accomplish, and did in fact represent a correct

assessment of the cost of this particular line of sewer based upon special benefits. The adoption and application, in the laying of assessments, of a rule of any sort and from whatever source derived, is not in violation of a requirement that they be laid with regard to special benefits, if that rule is, in the discretion and judgment of the assessing authority, chosen for the reason that it leads to the required result. The supreme requisite of an assessment proportioned to special benefits is, in the absence of specific legislative directions, the exercise of judgment and discretion by the assessing authority in the choice of means or otherwise, to the end that the required results may be reached. Given such results and such an exercise of judgment and discretion in reaching them, no assessment can be successfully assailed upon the ground that it is not made upon the basis of special benefits.

The findings of fact in these cases plainly disclose that whatever rule was adopted was not adopted as an arbitrary one, or as one which the bureau of compensation was bound to apply, but as one which appealed to the judgment of its members as one fairly leading, as it did in fact, to the results to be secured, to wit: an assessment of a proportional and reasonable part of the expense of the public work in hand, upon the basis of special benefits. The parties interested were heard, the premises inspected, and neither the frontage method nor the $1.75 rate adopted until it appeared, as the result of such hearing and examination, that their adoption would lead to the required result. The finding with regard to the method pursued by the bureau of compensation clearly negatives any other assumption.

A few incidental questions demand a passing consideration. We have treated the court's finding as to the results of the assessments made as stating the fact. The applicant, however, takes issue with this portion of the finding, and contends that as a matter of law it cannot be true that the assessments laid embodied a distribution of a reasonable and proportional share of the expense of the construction of the sewer in question upon the property-owners specially bene-

fited thereby, and made upon the basis of the special benefits accruing to each, and urges that necessarily, and as a matter of law, the assessments as made and upon the basis adopted must have produced and did produce disproportionate results, and results excessive as to the applicant.

It is quite clear that so sweeping a general statement cannot be justified. The court has found nothing which could not readily be true.

The applicant's brief objects to the assessments, for the reason that they were actually laid by the bureau of compensation, after reference to it by the court of common council, and not by the original and independent action of said court. The finding negatives such an assumption. It is found that the court of common council passed upon and adopted the report which the bureau of compensation made to it. In so doing it exercised its judgment and discretion and the assessments made became its assessments.

The assessment made against the applicant's land fronting on Shelton Avenue is particularly objected to as being in violation of that provision of the city charter which directs that the whole amount of assessments for benefits, by reason of any work or improvement, shall in no case exceed the cost thereof. 12 Special Laws, p. 1139, § 85. It appears that the total assessments along said avenue, which were separated into an independent report, amounted to $5,733.36, while the computed cost of that portion of the entire line of sewer was $5,623.79.

This contention is beset with two difficulties. In the first place the charter provides, as we have seen, that in estimating the reasonable part of the expense of any sewer for the purposes of assessment "the cost of constructing any main or trunk sewer, into or through which such other sewer is discharged, may be taken into consideration." 12 Special Laws, p. 1150, § 135. In the present case the newly-constructed sewer sought the harbor through two miles of other sewers, some of which cost as high as $38 per foot to construct. In the second place there remain the facts that the newly-constructed sewer was one not limited to

Shelton Avenue, and that the cost of the entire sewer exceeded by several thousand dollars the assessments made on its account. As it is unnecessary to accumulate justifications for the assessment, there is no need to follow the applicant's nicely critical argument, which seeks to give significance to the separation of assessment reports, which for some reason was resorted to.

There is no error.

In this opinion the other judges concurred.