THOMAS J. DONNELLY *vs.* THE CITY OF NEW HAVEN.

Third Judicial District, Bridgeport, October Term, 1919.
WHEELER, BEACH, GAGER, CASE and CURTIS, Js.

The power to legislate, conferred by the General Assembly upon a board of aldermen, cannot be delegated by that board; but powers which are purely ministerial, administrative or executive in their nature, may be delegated to a committee or to some appropriate officer or department of the municipality, unless the charter provides otherwise.
By § 132 of the charter of the city of New Haven, its board of aldermen

was authorized and empowered "to order, lay out, construct, repair, and alter public squares, parks, streets, highways, sewers, gutters, drains, bridges and walks," and the department of public works and its director, also created by the charter (§ 73), was empowered to execute all orders of the board of aldermen with reference to these matters. *Held* that in view of the general character of these and other like provisions of the charter, and the absence therein of any specification of details to be observed by the board of aldermen with respect to the construction of sewers,— an order of the board requiring the director of public works to cause a sewer to be constructed in a specified street between prescribed termini, of the proper size and materials, with all necessary manholes, culverts, basins, etc., was not a delegation of legislative power to such official, in violation of the terms of the charter, since all that remained to be done by the director was administrative and executive in character, calling for expert engineering skill which, under the charter, was to be found in the department of public works.

A city charter must be construed reasonably, and, so far as possible, to expedite and promote the ultimate purposes of the general welfare.

The grant of a municipal charter is a delegation of power from the General Assembly. Whatever such a charter requires the governing body of the municipality to do in person, obviously is not subject to delegation, although in reality the matters thus prescribed may be administrative or executive in their character.

Argued November 5th, 1919—decided January 6th, 1921.

APPLICATION by a property-owner for relief from a sewer assessment upon the ground of its alleged illegality, brought to the Superior Court in New Haven County and tried to the court upon a demurrer to the amended complaint; the court, *Warner, J.*, sustained the demurrer and afterward rendered judgment (*Greene, J.*) in favor of the defendant, from which the plaintiff appealed. *No error.*

On May 4th, 1908, the board of aldermen of the city of New Haven, pursuant to the report and recommendation of the committee on sewers and sanitation, to whom had been referred a petition therefor, passed an order in the following form: "**Ordered that the Director of Public Works cause a sewer to be constructed in Middle-**

town Avenue between Atwater Street and the Quinnipiac River, of the proper size and materials, with all necessary manholes, culverts, basins, and so forth."

On August 4th, 1913, the board of aldermen, pursuant to the report and recommendation of the same committee, passed another order identical in form except that it ordered a sewer to be constructed in Middletown Avenue between Atwater Street and Ferry Street. These two orders provided for a continuous sewer from Ferry Street to the river.

Thereafter the director of public works, professing to proceed under and pursuant to these orders, surveyed and laid out, and caused to be constructed, a sewer in Middletown Avenue between the points designated in the orders. Subsequently the bureau of compensation made report to the department of public works of the assessment and apportionment of the cost of the sewer so made, and this department, in turn, transmitted this report to the board of aldermen, and the board accepted the report and ordered payment pursuant to the assessment. Under this assessment the applicant was ordered to pay four several sums, to wit: $981.75, $87.50, $160.13 and $140, as assessed upon different lots fronting upon the sewer which had been so constructed.

The board of aldermen took no action with reference to said sewer except ordering its construction and adopting the report on assessments and ordering their payment.

It is alleged that this sewer was never included in any general plan of sewers for the city of New Haven adopted by the board of aldermen or by any other authority; that no other proceedings were ever had by the board with reference to this sewer; that the board of aldermen delegated to said director of public works the power to determine the proper size and materials of

said sewer, and what manholes, culverts, basins, etc., were necessary thereto; and that said director did determine and decide, and said board of aldermen did not determine and decide, the proper size and materials of said sewer, and what manholes, culverts, basins, etc., were necessary thereto. The petitioner, under the provisions of the charter, made application to the Superior Court for the annulment and vacation of the order of assessment.

To this application, the city of New Haven demurred for a number of reasons, among which were these: "(1) It does not allege that said sewer was not ordered and laid out in conformity with the requirements of the charter of New Haven. (2) It appears that said sewer was ordered and laid out in conformity with the requirements of the charter of the city of New Haven. (3) It appears that said sewer was ordered and laid out by a proper vote of the board of aldermen of said city. (4) It does not allege that the charter of said city required the board of aldermen to determine the proper size and materials of said sewer, or what manholes, culverts, and basins, and so forth, were necessary thereto. (5) It appears that the charter of said city did not require the board of aldermen to determine the proper size and material of said sewer, or what manholes, culverts, and basins, and so forth, were necessary thereto. (6) It does not allege that said board of aldermen delegated to said director of public works any of the powers vested by law in said board of aldermen. (7) It appears that said board of aldermen did not delegate to said director of public works any of the powers vested by law in said board of aldermen."

The following are the provisions of the charter with reference to sewers: Section 132 of the city charter (13 Special Laws, p. 425), approved June 20th, 1899, provides, among other things, that "said board of

aldermen is hereby authorized and empowered to order, lay out, construct, repair, and alter public squares, parks, streets, highways, sewers, gutters, drains, bridges, and walks. . . . The department of public works shall execute, and is hereby empowered to execute, all orders of the board of aldermen with reference to the matters contained in this section. The board of aldermen may, . . . upon the construction or alteration of any public sewer or other work, assess upon the persons whose property is in the judgment of said court especially benefited thereby, after reference to the board of compensation, . . . a proportional and reasonable part" of the expense thereof. By § 137 the board of aldermen is given the power to enact ordinances of the city of New Haven, among other things (subsection d) "to provide for the laying out, grading, discontinuing, altering, paving, opening, improving, lighting, and making and repairing highways, streets, walks, squares, parks, public buildings, drains, sewers, gutters." The charter also provides, § 73, for a department of public works, under the charge of one director; and in § 74 the charter provides that "except as otherwise provided in this Act, the director of public works shall be responsible for the care and management . . . of the construction, repair, cleaning, and general care of all sewers, drains, culverts, sluiceways, and catchbasins. He shall cause all orders of the board of aldermen concerning any of said subjects to be executed." In the department of public works (§ 76, subsection 3), there is established a bureau of engineering, "which shall be under the care of an experienced civil engineer, who shall be known as the city engineer, and shall make all surveys, maps, plans, drawings, specifications, and estimates relating to the work of said department; shall superintend the construction and repair of sewers, bridges, and new pavements. . . ."

*Harrison Hewitt* and *Charles E. Clark*, for the appellant (plaintiff).

*William L. Bennett*, for the appellee (defendant).

GAGER, J. It appears from the complaint that the only action taken by the board of aldermen with reference to the construction of the two connecting sections of the Middletown Avenue sewer, was in and by two orders, identical in form except for the designation of the termini of each section, and reading: "Ordered that the director of public works cause a sewer to be constructed in Middletown Avenue between [naming the termini], of the proper size and materials, with all necessary manholes, culverts, basins, and so forth." The plaintiff claims that this order constituted an invalid delegation of power to the director of public works, and that the laying of the sewer by the director under this order was not legally authorized; that the assessment of benefits was, by consequence, illegal and an attempt to take money without due process, and should be annulled; and both parties agree that the fundamental question in this case is whether or not the order for the laying of these sewers was so inadequate as to involve a delegation of power with reference to the construction of this sewer, of such matters as were properly legislative in character and should under the proper construction of the charter have been performed by the board of aldermen itself and not by the director of public works.

In *Bradley* v. *New Haven*, 91 Conn. 100, 98 Atl. 977, an order for a sewer, similar in form to that which is the subject of this case, was brought before this court, where it was sought to raise the same question of the unlawful delegation of power to the director of public works. It was there held, however, that in view of the

assumption that the city might have adopted a comprehensive scheme of sewerage, the details of which covered the case, and the further assumption that under the decision in the case of *Bassett* v. *New Haven,* 76 Conn. 70, 55 Atl. 579, the court was entitled to take judicial notice that a general sewer system for New Haven was adopted and followed, the complaint did not allege a delegation of power. The pleadings in the present case are so drawn as to negative any assumption of such a sewer system as applied to Middletown Avenue, and we are therefore compelled to decide the question whether, upon the pleadings, an unlawful delegation of power is sufficiently alleged. This decision depends, not alone upon the specific allegations of fact contained in the complaint, but upon such allegations of fact as interpreted in the light of the charter.

The principle appears to be everywhere recognized that the "public powers or trusts devolved by law or charter upon the council or governing body [of a municipality], to be exercised by it when and in such manner as *it* shall judge best, *cannot be delegated to others.*"   1 Dillon on Municipal Corporations (5th Ed.) § 244; 28 Cyc. pp. 276, 277; 19 R. C. L. p. 896; and numerous cases there cited. In Cooley on Constitutional Limitations (7th Ed.) p. 293, the rule is thus expressed: "So far as its functions are legislative, they rest in the discretion and judgment of the municipal body intrusted with them, and that body cannot refer the exercise of the power to the discretion and judgment of its subordinate or any other authority." At the same time, this rule is modified by the equally well supported and understood qualification that powers of a purely ministerial, administrative, or executive nature, may be delegated to a committee or some appropriate officer. See authorities cited above.

While the rules above stated are generally agreed

upon, their correct application to cases under specific municipal charters is not always easy. The municipal charter is a delegation of power from the legislative body of the State. Whatever is by such a charter required to be done by the governing body of the municipality, must, so far forth as that municipality is concerned, be deemed to be legislative in character, and can only be done by such governing body itself. Hence it is that many matters may be referred by a charter to the action of such municipal body which are really administrative or executive in their character. In a given case the generality or the detail of the power as set forth in the charter must be carefully examined, and will furnish the guide as to what powers may and what may not be delegated by the governing body. From this it further follows, as we shall show later, that numerous cases relied upon as forbidding the claimed delegation of power in this case are, by reason of the different provisions of the statute or charter, of no authority in the case of a charter of the generality of that of New Haven. It is to be observed that the power given the board of aldermen with reference to sewers is incorporated with its power as to public squares, parks, streets, highways, gutters, drains, bridges, and walks; and the authority is an omnibus authority as to all of them: "to order, lay out, construct, repair and alter." Charter, § 132. This authority is most general in its terms. Unlike the authority contained in most of the charters cited in support of the plaintiff's case, it is quite lacking in detail as to what the board of aldermen must itself do. Except as to assessments made after the completion of the work, as to which no complaint is made, this section does not relate to procedure of the board, but simply confers general powers over the subject-matter. Wherever the legislature thought it necessary to prescribe a

procedure, it has, as will be shown later, done so, but in fact no procedure is prescribed with reference to sewers, other than as relates to sewer assessments. This generality of language leaves it optional with the board to determine the extent to which it shall go with reference to details. While undoubtedly the board could go into as much detail as it desired, the question is not what may it do, but what must it do under its general powers to act validly with reference to a sewer. The plaintiff contends that it is not enough to order the construction of a sewer by the director of public works in a named street between two named termini, such sewer to be of proper size and materials, with all necessary manholes, culverts, and basins; but it is claimed the board must itself determine as to the size, materials, manholes, culverts, basins, etc. The charter nowhere requires this, unless it can fairly be inferred from the words of general authority. When it is once legislatively determined that a proper sewer shall be constructed in a given street between two termini, all the rest becomes administrative and executive in character, requiring expert engineering skill for its ascertainment, which, under the charter, has been provided through the department of public works, its director and engineer. As to the matters referred, it is manifest that the board cannot be presumed to have any special knowledge of sewer construction upon which it can base the exercise of a judgment or discretion. The board has been by the charter left perfectly free as to how these subordinate matters shall be determined, and they are all within the exception noted in Dillon and the authorities quoted above.

Verbal analysis of the words conferring authority in § 132 of the charter, does not invalidate this conclusion. "To order" a sewer certainly does not. The board did definitely exercise what was the only necessary legisla-

tive function, of determining whether there should be a sewer and where it should be. "Lay out" has with us no technical meaning as applicable to sewers. In *Cone* v. *Hartford*, 28 Conn. 363, under the charter of the city of Hartford as it existed in 1859, in a suit to recover back a sewer assessment, the court said (p. 375): "We do not think that there is any force in the objection to the manner in which the sewer in question was laid out. When the Act, under which the benefit of it was assessed in part to the plaintiff, speaks of the *laying out* of drains and sewers, it does not use that term in the peculiar and technical sense which is attached to it in the statutes relating to the laying out and construction of highways, where it has been held to embrace all that series of acts which are made necessary to the complete establishment of a highway (*Wolcott* v. *Pond*, 19 Conn. 596); but only intended the designation by the common council of the locality of the sewer or drain, and its dimensions and mode of construction, and this only for the purposes of their own action and of those they might employ in building it; and it is no more necessary, in the execution of the powers respecting it, to do any formal acts in order to validate their doings as to the owner of the highway in which it is made, than it would be in the case of any other repairs made by them upon the highway, and for such repairs previous formal action by them is clearly unnecessary to their legality." In that case the highway committee was instructed to build. True, it would appear that there the common council did determine the material, dimensions and grade, but the court said it was only for their own action and those they might employ in building. We do not understand the court to hold that the determination of these details by formal legislative action was held to be a *sine qua non* of the validity of the order. No formality whatever was needed, and for all that appears

the ascertainment of all details could be directly turned over to experts. When the sewer was done the common council was responsible. The court's point of view is indicated by comparing the construction of the sewer to the making of repairs. The city council apparently did not have, as part of its force, skilled engineers to refer to, but only a highway committee, and it voluntarily undertook to determine certain things for itself.

"Construct" has a variety of meanings specially indicated by its synonyms: "build, compose, put together, erect, fabricate, form, frame, putting together, setting up." Standard Dictionary, word "construct." The underlying idea, as gained from these synonyms and as primarily used in this charter, is the physical performance of the work required to bring the thing ordered into existence either by itself, which ordinarily cannot be done, or by whomever this body may see fit to employ. On the whole, we are of opinion that by the New Haven charter the legislature, in the authority given as to the construction of sewers, although permitting, never intended to impose upon the board of aldermen the necessity of determining the physical features and constructive details of every sewer it might order to be constructed, but allowed the board to delegate these matters to those in whose skill it had confidence.

The real question is whether the matters under examination, "size, materials, manholes," etc., are administrative or executive in their character, as we have held, and we turn to some of the authorities in point. The theory as to delegation of legislative powers must necessarily be the same in the case of legislatures generally, both State and municipal, with this important exception: that in the case of municipal charters the granting legislature may arbitrarily make certain acts legislative, as to a given municipal body—in this case the board of aldermen—by imposing their performance

on that body, although upon general considerations the acts themselves may be entirely administrative or executive in their nature. In *Lothrop* v. *Stedman,* 42 Conn. 583, the legislature passed a statute repealing the charter of the American National Life & Trust Company, provided that if the company should make up a deficiency before a certain date the charter should remain in force, and appointed a special tribunal to determine whether the deficiency was made up. It was claimed that this constituted a delegation of power with reference to the repeal of the charter. The action was in the United States Circuit Court for the District of Connecticut. Shipman, Judge, said, page 593: "The legislature, for itself, determined and enacted that the charter should be repealed, provided an event did not occur in the future; the ascertainment and announcement that the event had happened, the legislature entrusted to an officer, or a committee, whom it designated. The legislature delegated to no one the power to determine whether the charter should or should not be repealed. It delegated the duty of ascertaining whether a fact existed, upon the existence of which it had determined that the repeal should not go into effect." So, here, we say that when the board of aldermen ordered a proper sewer to be built in a given street between given termini, it did all the legislating that the charter required in passing this order. The ascertainment of the essential constructive details to accomplish the general order of the board was not made legislative in character by the charter, nor was it so in the nature of things. The same idea is adopted in *Connecticut Co.* v. *Norwalk,* 89 Conn. 528, 94 Atl. 992. It was claimed that § 4 of the Special Act of 1913, increasing the power of the bridge construction committee of Norwalk, contained a delegation of legislative power to the Public Utilities Commission. This sec-

tion (16 Special Laws, p. 1144, § 4, approved January 4th, 1913) provides: "The Public Utilities Commission is hereby authorized to determine the number of tracks, not exceeding two, to be laid by any street railway company operating a street railway upon the bridge constructed under the provisions of said Act." On the claim that this was an unconstitutional delegation of legislative power, it was held, as stated in the syllabus: "The General Assembly itself can determine the number of street-railway tracks which shall be laid over a bridge, or it can delegate the determination of that question to the commission exercising administrative and executive functions. It cannot, however, delegate legislative discretion to an administrative tribunal." The argument, most briefly stated, was that the legislature, having made public convenience, or necessity, or safety, the basis of the administrative orders authorized by the new commission, it might properly delegate to the commission the ascertainment of whether or not the specific facts of the case, measured by the ultimate legislative standard stated, permitted two tracks or only one track across the bridge. "Legislation of this character, having established the primary standard, may devolve upon the administrative tribunal the executive duty of carrying out the purpose and policy of the statute." p. 532. In this opinion a number of cases are cited from the United States Supreme Court which amply support the conclusion reached and adopt the principle that where the provisions of the statute are to be applied upon ascertaining situations of fact, although this involves judgment and discretion, it is not a delegation of legislative authority to entrust to subordinate authority the power to apply the law as it may find the facts. We cite briefly from some of these cases. In *Wayman* v. *Southard*, 23 U. S. (10 Wheat.) 1, 42, 6 L. Ed. 253, 262, where he was con-

Donnelly *v.* New Haven.

sidering the authority of courts to make rules, Chief Justice Marshall said: "It will not be contended that Congress can delegate to the courts, or to any other tribunals, powers which are strictly and exclusively legislative. But Congress may certainly delegate to others, powers which the legislature may rightfully exercise itself." As to what these permissive powers were, he said: "The line has not been exactly drawn which separates those important subjects, which must be entirely regulated by the legislature itself, from those of less interest, in which a general provision may be made, and power given to those who are to act under such general provisions to fill up the details." In connection with this the court, in *United States* v. *Grimaud,* 220 U. S. 506, 31 Sup. Ct. 480, 55 L. Ed. 563, used this language, considering the powers delegated to the Interstate Commerce Commission: "From the beginning of the Government various Acts have been passed conferring upon executive officers power to make rules and regulations—not for the government of their departments, but for administering the laws which did govern. None of those statutes could confer legislative power. But when Congress had legislated and indicated its will, it could give to those who were to act under such general provisions 'power to fill up the details' by the establishment of administrative rules and regulations, the violation of which could be punished by fine or imprisonment fixed by Congress, or by penalties fixed by Congress or measured by the injury done." In *Field & Co.* v. *Clark,* 143 U. S. 649, 694, 12 Sup. Ct. 495, 36 L. Ed. 294, 310, the court said: "The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There

are many things upon which wise and useful legislation must depend which cannot be known to the lawmaking power, and, must, therefore, be a subject of inquiry and determination outside of the halls of legislation." And so it is held in the case last cited, that "the authority to make administrative rules is not a delegation of legislative power, nor are such rules raised from an administrative to a legislative character because the violation thereof is punished as a public offense." In *Welch* v. *Swasey*, 193 Mass. 364, 79 N. E. 745, an Act was under examination concerning limiting the height of buildings in Boston, and appointing a committee to determine the limits of two districts to which the law relating to the height of buildings should apply. The objection had been taken that this was a matter that the legislature itself should have acted upon, and the court said, page 375: "The delegation to a commission of the determination of the boundaries of these parts for the two classes was within the constitutional power of the General Court. The work of the commissioners under the first Act was not legislation, but the ascertainment of facts, and the application of the statute to them for the purposes of administration. Such subsidiary work by a commission is justified in many cases." The court further held that the part of the Act authorizing the commissioners to make rules and regulations which were in the nature of subsidiary legislation, was supportable, citing *Brodbine* v. *Revere,* 182 Mass. 598, 66 N. E. 607. In *Codman* v. *Crocker,* 203 Mass. 146, 89 N. E. 177, a public Act authorized the Boston Elevated Railway to construct a tunnel from Cambridge into Boston by one of two alternative routes, and gave the Boston Transit Commission authority to determine upon which of these two routes the road should be constructed. Objection was here made that this constituted an unconstitutional

delegation of legislative authority. The court said: "But the Legislature determined that a railway for the same general service might be constructed by either of two routes to either of two termini, and left to this commission the question of administration as to which of the two modes of building this great public work would be the better. This was a delegation only of such powers as often have been left to boards of public officers with the approval of this and other courts." We think the proposition here assumed applies to this case. In the recent case of *Hancock* v. *Muskogee*, 250 U. S. 454, 458, 39 Sup. Ct. 528, 63 L. Ed. 1081, it was said that where full legislative power over the subject-matter has been conferred by the State upon a municipal corporation, a legislative determination by the local legislative body is of the same effect as though made by the general legislature. In *Collins* v. *Holyoke*, 146 Mass. 298, 15 N. E. 908, the statute provides that the mayor and aldermen "lay, make . . . and repair" sewers. The mayor and aldermen of Holyoke passed an order "that the committee on sewers and drains be hereby authorized and instructed to construct a trunk line sewer," and then designated the streets and termini and nothing more. On appeal the court said: "Although the proceedings which we are considering were very irregular, the legal questions which arise in the case as presented are comparatively simple. It is true, as contended by the petitioner, that the mayor and aldermen could not delegate the authority given them by the Public Statutes, Chap. 50, § 1, to lay and make common sewers. But no suggestion is made that this sewer was not legally laid, and it is only objected that it was 'built under the supervision and direction of a committee, composed of four members of the common council and three aldermen.' But this was done by order of the mayor and aldermen. The statute

which gave them authority to make the sewer did not preclude them from employing agents to supervise and direct the work. If there was any irregularity in their conduct in this respect, we cannot say that the sewer was not 'made' by the defendants, or that it was illegally constructed."

The law with reference to the construction of this sewer was adequately stated when the board of aldermen said to the director of public works, "build a proper sewer between certain points on Middletown Avenue." The details were to be filled out by the responsible city officer, through the bureau of engineering, to which all details with reference to the sewers of New Haven are presumed to be well known, and which is presumed to have all of the engineering knowledge necessary to construct, care for, and manage sewers, and whose duty it is to carry out the orders of the board of aldermen. The size, material, etc., were to be "proper." The matters referred by the order to the director of public works are purely technical in their character, matters which a board of laymen is not competent to determine and which, except at great risk to the public welfare, must be referred to an engineer. As applied to this charter, we should say that the essential legislative function consisted in determining whether there should be a proper sewer in this street, and the determination of this matter was in no wise delegated to the director of public works. Technical rules are not, properly considered, the subject of judgment or discretion in the legislative sense. Whether or not they shall be applied to produce a certain result is a matter of judgment, and that judgment the board of aldermen exercised. How far the board shall go in specifying the technical rules and conclusions to be applied, would be a question of expediency for the board, and would depend entirely upon the skill and

the ability of the one ordered to construct. The order must be construed with the charter, and the reference to the duties of the director of public works and the departments under him, leaves it quite clear that the technical requisites of the construction of the sewer could be safely assumed by the board to be possessed by him. The propriety referred to in the order was not a legislative propriety, as to which there might be honest differences of judgment, but an engineering propriety, which is simply the application, to the construction of the sewer in question, of engineering rules as ascertained and applied through scientific knowledge of what would be required in a given set of circumstances and which cannot be varied by a legislative vote; as, for illustration, a legislative vote of a six-inch main when the watershed requires a twelve.

We say that many, if not most, cases cited to us in support of the plaintiff's contention, are, so far as the delegation under the general rule is concerned, of no particular consequence. They do not help to determine a case where the power is general, like that in the charter of New Haven. In those cases the question upon which the claimed unlawful delegation of power was concerned, arose under statutes and charters with reference to matters specifically referred to the governing board for its action. As we have already stated, if the legislature specifically requires the action of the governing board upon any particular matter, that makes it, so far as that charter is concerned, a matter of legislative discretion. The case of *Bolton* v. *Gilleran*, 105 Cal. 244, 38 Pac. 881, 45 Amer. St. Rep. 33, is much relied upon. By statute, the board of supervisors of San Francisco was the authority to direct improvements and, as an initiatory step, was required to adopt a resolution of intention "describing the work proposed," and it was further provided by statute that

before passing the resolution for construction, the board should have before it plans and specifications and careful estimates of the cost furnished by the city engineer if required, and, for the work of constructing sewers, specifications should always be furnished, and that the board should award the contract to the lowest bidder in the case of a sewer, but that the contract should be offered to the property-holders who might be assessed for construction, if they saw fit to take it. In a case that arose in the construction of a sewer, the nature of the foundation was very uncertain, and the contract as entered into gave the superintendent of streets discretion to determine what was suitable foundation and what was unsuitable, the differences in cost, set out in the contract, amounting to fully one third of the contract price. The court held that, as the statute required a contract definitely determining the expense, the uncertainty as to the nature of the foundation was no excuse, and a contract which left the decision as to the nature of its foundation to the superintendent of streets, was the delegation of a power expressly conferred on the board. It will be seen that this case arose under a procedure totally different from that of New Haven, and that by the terms of the statute the power conferred by the supervisors upon the superintendent of streets was required to be exercised by the supervisors themselves. This case is no authority further than the general principle is concerned, as to which there is no dispute. Moreover, by the later cases of *Haughawout* v. *Hubbard*, 131 Cal. 675, 63 Pac. 1078, and *McCaleb* v. *Dreyfus*, 156 Cal. 204, 209, 103 Pac. 924, the decision in *Bolton* v. *Gilleran* is severely criticised, and in the latter case specifically overruled, so far as the delegation of authority under the contract to the city engineer was involved. In *Lowery* v. *Lexington*, 116 Ky. 157, 75 S. W. 202, the

city of Lexington had power under the statute by ordinance to establish, erect, and maintain sewers. An ordinance was passed which apparently in general terms provided for a sewer system, but turned over all detail with reference to its establishment and the construction to a committee. The court properly held that this should not be done. That would be as though, in the present case, the board of aldermen had ordered the director of public works to construct a proper sewer in Middletown Avenue if he deemed it necessary. The definite limited case we have here was not in the *Lowery* case. In *Birdsall* v. *Clark*, 73 N. Y. 73, 29 Amer. Rep. 105, the charter provided that whenever the work of building or repairing a sidewalk should not be done within the time limited in the order, the common council should, by contract or otherwise, cause it to be done. The common council passed a general ordinance directing the superintendent of streets in any such case to cause the same to be done. Here the charter expressly required the action of the council, and the general ordinance was properly held invalid. *Thompson* v. *Schermerhorn*, 6 N. Y. 92, is frequently cited as one of the early cases with reference to municipalities. A common council was authorized to pass ordinances directing any street to be paved "within such time and in such manner as they might prescribe." An ordinance directing the paving to be done in such manner as "the city superintendent" should prescribe, was passed. This is similar to the case of *St. Louis* v. *Clemens*, 43 Mo. 395, where the charter provided specifically that the dimensions of a sewer should be prescribed by ordinance, but the ordinance was that the dimensions should be as prescribed by the city engineer. So, also, in *McCrowell* v. *Bristol*, 89 Va. 652, 16 S. E. 867, 20 L. R. A. 653, the charter directed the common council to prescribe the width of sidewalks, and the

council by ordinance attempted to delegate the power to the city engineer. We might refer to other cited cases.

We do not undertake to say that there is no case in which language may be found which will support the plaintiff's contention, but the cases cited by him do not go further than the general rule, and do not determine what is the difference between legislative discretion and administrative and executive power. A charter must be construed reasonably, and, so far as possible, to expedite and promote the ultimate purposes of the general welfare. If too technical an interpretation is adopted, it may, as in *Bolton* v. *Gilleran,* 105 Cal. 244, 38 Pac. 881, 45 Amer. St. Rep. 33, lead to reversal as furnishing merely technical excuses for resisting payment of assessments for work entirely good in itself, because of some technical error in the method of their authorization. It is to be noticed, although really no part of the basis of the decision, that there is in the complaint not the slightest suggestion that the sewer in question was unnecessary in fact, or was not properly and economically laid.

If it be objected that this construction of the charter is too broad, the answer is that as to the other matters within the power of the board of aldermen, the charter, by §§ 78 to 81, makes quite elaborate provisions as to procedure with reference to the layout of any square, park, street, highway, bridge, or work, or the establishment of any building-line or discontinuance of any highway. Measures referring to these subjects are referred to the department of public works. Public hearings are held; surveys and layouts are prepared; assessments made by the bureau of compensation; maps and plans are drawn; and the report in detail is made to the board, which, after all necessary preparations, may accept the report and adopt the layout

or assessments, or modify the same. By § 82, referring to the construction or repair of sidewalks, curbs or gutters, they are made on the order of the board of aldermen "in the manner and within the time specified in the order." Sewers are omitted from these provisions. The only notice that appears to be required as to them is that after the sewer is completed, the matter of assessment is left to the bureau of compensation, which gives notice to those who may be affected. Whether rightly or wrongly, the charter confers upon the board of aldermen this power as to sewers in the simplest and briefest language, without calling for hearings or prescribing any details as to procedure, and without making the determination of any constructing engineering details the subject of its legislative action.

We are therefore of opinion that the orders of the board of aldermen described in the complaint are in conformity with the charter and do not violate the constitutional inhibition against the delegation of legislative power by the board of aldermen. This disposition of the matter makes it unnecessary to discuss the other points raised by the demurrer, and the demurrer is sustained for the reasons above stated.

There is no error.

In this opinion the other judges concurred.