[No. 15397.    Department One.—December 26, 1894.]

ELLEN BOLTON, APPELLANT, *v.* JAMES GILLERAN ET AL., RESPONDENTS.

STREET IMPROVEMENT — AUTHORITY OF SUPERVISORS — DELEGATION OF POWER.—The board of supervisors of the city and county of San Francisco has exclusive authority for the improvement of its streets, and has no power to delegate authority to the superintendent of streets to determine the necessity of making any improvement in whole or in part, or the character or extent of any improvement which it may itself direct to be made.

ID.—CONSTRUCTION OF SEWERS—VOID RESOLUTION OF INTENTION—SPECIFICATIONS OF CITY ENGINEER—DISCRETION OF SUPERINTENDENT.—A resolution of intention to construct sewers upon certain designated streets, according to the plans and specifications prepared by the city engineer, which contain provisions and conditions which are not determined by the supervisors, but are left to the discretion of the superintendent of streets, without any fixed rules to control his discretion, is void, and no lien can be created under it.

ID.—POWER TO DETERMINE AMOUNT OF ASSESSMENT—EXPENSE OF IMPROVEMENT—DELEGATION OF POWER.—The legislative body must deteimine not only the character and extent of the improvement to be made, but also the amount of the burden which is to be imposed by assessment upon the adjacent property, to defray the expense of the improvement; and, after the improvement has been ordered, the actual expense must be approved by the legislative body, and fixed in the contract for doing the work as the *data* upon which the assessment is to be calculated, and no part of the assessment, or of the power to determine the actual expense of the improvement, can be delegated to the superintendent of streets.

ID.—INVALID LIEN—CLOUD UPON TITLE—EQUITY—DEFENSE.—An action may be maintained by the owner of property subject to an invalid street assessment to have it adjudged invalid, where there is nothing upon the face of the assessment to show that the lien is not valid, and where, by reason of matters outside of the assessment as it is recorded, the apparent lien may be shown not to be a valid encumbrance; in such case the assessment constitutes a cloud upon the title, which the property owner is entitled to have removed by a court of equity, although the same matters may be asserted as a defense to an action for the enforcement of the assessment.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.

The facts are stated in the opinion of the court.

*J. C. Bates,* for Appellant.

That property owners have a remedy by this form of suit is sustained by numerous authorities. (*Turney* v. *Dougherty,* 53 Cal. 619; *Ellwood* v. *City of Rochester,* 122 N. Y. 229; *Hassan* v. *City of Rochester,* 67 N. Y. 536; *Hassen* v. *City of Rochester,* 65 N. Y. 516; *Hollister* v. *Sherman,* 63 Cal. 38; *Gage* v. *Kaufman,* 133 U. S. 471; *Lyon* v. *Alley,* 130 U. S. 187; *Archbishop of San Francisco* v. *Shipman,* 69 Cal. 591; *Davies* v. *City of Los Angeles,* 86 Cal. 37; *Weyse* v. *Crawford,* 85 Cal. 197; *Dehail* v. *Morford,* 95 Cal. 457; *Howell* v. *City of Tacoma,* 3 Wash. 711; 28 Am. St. Rep. 83.) An assessment, though showing fatal defects on its face, would cast a cloud and require evidence *aliunde* to defeat it. (*Hibernia etc. Society* v. *Ordway,* 38 Cal. 682; *Ellwood* v. *City of Rochester,* 122 N. Y. 236.) There was clearly a delegation of authority by the board of supervisors in regard to the performance of the work in this, that it was left to the discretion of, and the power delegated to, the superintendent of streets as to whether the sewers should be on stable foundations, or whether planking and concrete should be required in their construction, and such delegation was in excess of the power of said board, and rendered the contract and assessment absolutely null and void. (*City of Stockton* v. *Creanor,* 45 Cal. 646; *Richardson* v. *Heydenfeldt,* 46 Cal. 68; *Meuser* v. *Risdon,*

36 Cal. 244; Dillon on Municipal Corporations, secs. 779, 796; *Phelps* v. *Major*, 112 N. Y. 216; *Thompson* v. *Schermerhorn*, 6 N. Y. 95; 55 Am. Dec. 385; *Hydes* v. *Joyes*, 4 Bush, 464; *Hassan* v. *City of Rochester*, 67 N. Y. 537, 538; *Hassen* v. *City of Rochester*, 65 N. Y. 520; *Kansas City Grading Co.* v. *Holden*, 32 Mo. App. 490; *Matter of Turfler*, 44 Barb. 52; *Dougherty* v. *Hitchcock*, 35 Cal. 512; *Manning* v. *Den*, 90 Cal. 616; *Dougherty* v. *Coffin*, 69 Cal. 454; *Hewes* v. *Reis*, 40 Cal. 262, 263; *Heft* v. *Payne*, 97 Cal. 108.)

*Ash & Mathews*, for Respondents Conklin & Co.

*Frs. E. Spencer, C. T. Bird*, and *D. W. Burchard*, for Respondents Gilleran *et al.*

This action is not the proper action to bring, as the alleged illegality, if any there was, appears upon the face of the proceedings themselves, making them manifestly void, and therefore not a cloud upon plaintiff's title. (*Hollister* v. *Sherman*, 63 Cal. 39; *Bucknall* v. *Story*, 46 Cal. 600; 13 Am. Rep. 220; *Easterbrook* v. *O'Brien*, 98 Cal. 671; *Savings & Loan Soc.* v. *Austin*, 46 Cal. 488; *Houghton* v. *Austin*, 47 Cal. 651; *Dean* v. *Davis*, 51 Cal. 406, 412.) There was no delegation of authority by the board of supervisors to the superintendent of streets. (*Emery* v. *San Francisco Gas Co.*, 28 Cal. 378; *Gafney* v. *San Francisco*, 72 Cal. 151; *Dyer* v. *Hudson*, 65 Cal. 372; *Deady* v. *Townsend*, 57 Cal. 299; *Harney* v. *Heller*, 47 Cal. 17; *Hitchcock* v. *Galveston*, 96 U. S. 341; Dillon on Municipal Corporations, 4th ed., sec. 96.)

Harrison, J.—The board of supervisors of the city and county of San Francisco passed a resolution of intention June 1, 1891, to construct sewers in Fell street, and certain connecting streets, " according to plans and specifications prepared by Charles S. Tilton, city engineer." After an order for said improvement of the streets had been passed, the board of supervisors caused notice for sealed proposals to do the work to be given, and,

upon receiving bids therefor, awarded the contract to the respondents, Conklin & Co. After the completion of their contract the superintendent of streets made an assessment therefor, which, after being recorded, was delivered to the said respondents. A portion of the expense for doing the work was assessed against certain lands of the plaintiff, and this action was brought by her to obtain a judgment declaring that the contract made with said respondents for the work be declared null and void, and that the assessment be declared not to be a lien upon any of her said property. Judgment was rendered in favor of the defendants, from which the plaintiff has appealed upon the judgment-roll without any bill of exceptions.

The legislature of the state has conferred upon the " legislative department of the government of any city," which in San Francisco is the board of supervisors, the exclusive authority for the improvement of its streets. This legislative department of the city has no power to delegate to any other officer or body the authority to determine upon the necessity of making such improvement, or the character or extent of any improvement which it may itself direct to be made. In the language of Mr. Dillon (Mun. Corp., sec. 96): " It is not competent for the council to pass an ordinance delegating or leaving to any officer or committee of the corporation the power to determine the mode, manner, or plan of the improvement." Accordingly, it has been held that no valid assessment upon property can be made under an order directing the improvement "where necessary " (*Richardson* v. *Heydenfeldt*, 46 Cal. 68); or " excepting such portions of the above-described work which have been already done in a suitable manner " ( *Foss* v. *Chicago*, 56 Ill. 354); or for constructing curbs "where the same are not now in good and sound condition " (*Bryan* v. *Chicago*, 60 Ill. 507); or where, in constructing a drain, certain pieces of lumber were to be set " at equidistant points of not more than four feet " (*Village of Hyde Park* v. *Carton*, 132 Ill.

103); or improving " such portions of the sidewalks as the city engineer may direct " (*Hydes* v. *Joyes,* 4 Bush, 464; 96 Am. Dec. 311); or "in such manner as the city superintendent shall direct." (*Thompson* v. *Schermerhorn,* 6 N. Y. 92; 55 Am. Dec. 385. See, also, *Phelps* v. *Mayor,* 112 N. Y. 221; *City of Kankakee* v. *Potter,* 119 Ill. 324; *McCrowell* v. *City of Bristol,* 89 Va. 652.) The legislative body must determine, not only the character and extent of the improvement which it will authorize, but also the amount of the burden which is to be imposed therefor by the assessment upon the adjacent property to defray the expense of the improvement. This power of assessment is referable to the power of taxation, and is itself a legislative power which must not only find express authority for its exercise, but which can be neither exercised by an executive officer, nor delegated to such officer by the legislative body of the municipality. The clerical or ministerial act of apportioning the assessment upon the lands to be charged therewith may be performed by another official, but whether the assessment shall be imposed upon the lands, and the amount of such assessment, must be determined by the legislative body. A prominent consideration before this body, in determining whether an improvement shall be made upon a street, is the amount of its expense and the advantage that will accrue therefrom to the property which is to be charged with that expense; and unless it can know to a reasonable degree of certainty what the expense will be, it will be unable to exercise any intelligent discretion in determining whether the improvement should be made. Hence, it becomes necessary for the legislative body to know the probable expense of the improvement before it will order it to be made, and, after the improvement has been ordered, the actual expense must be approved by this body and fixed in the contract for doing the work as the *data* upon which the assessment is to be calculated. This includes not only the price at which the work is to be done, but also the items of the material

and work which enter into its construction, so that the official who is to apportion the expense shall have no other function than to compute the amounts that have been previously approved by the legislative body.

This power and the exercise of this discretion in the city and county of San Francisco has been conferred upon the board of supervisors, and must be exercised by that body, and cannot be delegated by it to the superintendent of streets.   By section 2 of the street improvement act of this state (Stats. 1889, p. 157) the authority to direct improvements is given to the city council of any municipality, which, in section 34 of the act, is declared to include " any body or board which under the law is the legislative department of the government of any city"; and section 3 requires, as the initiatory or jurisdictional step, that the board of supervisors shall pass a resolution of intention "describing the work" which they propose to order done, and that "before passing any resolution for the construction of said improvements, plans and specifications, and careful estimates of the cost and expenses thereof, shall be furnished to said city council, if required by it, by the city engineer of said city, and, for the work of constructing sewers, specifications shall always be furnished by him."   Section 5 provides that, before awarding any contract, a notice with " specifications" shall be given, inviting proposals for doing the work ordered; and the city council is authorized to reject all proposals, if it deem it for the public good, and can award a contract only to the lowest responsible bidder.   This contract is to be entered into by the superintendent of streets with the bidder to whom it has been awarded, and, after its completion, the superintendent is to apportion the expense of the work, as fixed by the contract, upon the lands liable to be assessed therefor.

The proceedings in the present case show a wide departure from these provisions.   The work which was "described" in the resolution of intention was the construction of sewers upon certain designated streets, " of

the materials and dimensions hereinafter described," and " according to plans and specifications prepared by C. S. Tilton, city engineer." One of these specifications was in the following terms: " If the soil be of improper nature for a foundation it shall be removed to a sufficient depth, and two tiers of three-inch planks be laid, one tier transversely and the other tier longitudinally, to be securely spiked with six-inch cut spikes where the foundation is not sufficiently secure; and upon these planks will rest a bed of concrete which must be laid to conform to the invert, and to be to a depth below the center of the invert, as shown on plans." In the notice for proposals calling for bids these specifications were referred to, and bidders were required to estimate for the entire work, and state for how much they would construct the sewers per lineal foot " if on stable foundation," and for how much per lineal foot " if planking and concrete should be required," "correctly computing and carrying out the aggregate amount for the entire work." Under this notice Conklin & Co. presented a bid in which they offered to take the entire work at the following prices: " Per lineal foot, for the five-foot circular brick sewer, if on stable foundation, $9.83; per lineal foot, for the five-foot circular brick sewer, if planking and concrete should be required, $12.78; per lineal foot, for the 4 x 5 foot elliptical-shaped brick sewer, if on stable foundation, $8.50; per lineal foot, for the 4 x 5 foot elliptical-shaped brick sewer, if planking and concrete should be required, $11.45; per lineal foot, for the 3 x 5 foot egg-shaped brick sewer, if on stable foundation, $7.20; per lineal foot, for the 3 x 5 foot egg-shaped brick sewer, if planking and concrete should be required, $10.24"; and a contract therefor was awarded to them at those prices, and was afterwards entered into between them and the superintendent of streets.

A mere glance at these proceedings shows that the amount of tax which is to be imposed upon the lands for the expense of the improvement was not determined by the supervisors in their award of the contract, but

that they gave to the superintendent of streets the discretion to determine that amount to the extent of fully one-third thereof. For the 5 foot circular sewer which was to be constructed for $9.83 per lineal foot the superintendent was allowed to add $2.95 for each foot, according as he should determine whether the foundation was stable, or whether there should be a foundation of plank and concrete, and he was given the same discretion to determine whether the cost of the 4 x 5 foot elliptical brick sewer should be $8.50 or $10.45, while the cost of the 3 x 5 egg-shaped sewer could be increased by him from $7.20 to $10.24, an increase of nearly fifty per cent. This discretion was not controlled by any fixed rules, but its exercise was intrusted solely to his own judgment or volition. The specifications gave no indication of the amount of "stable foundation" on which the sewers were to be laid, or what character of ground should be regarded as "stable foundation," or the extent of the ground for which "planking and concrete" would be required. These matters were to be determined by the superintendent of streets alone, nor were the conditions for his determination fixed. What constituted an "improper" nature for a foundation, or what would be a "sufficient depth" to which it was to be removed, or the place in which the foundation was not "sufficiently secure," were elements of uncertainty which prevented any previous determination of the cost. It is not sufficient to say that the character of the ground in which the sewers were to be constructed was not known to the board of supervisors. It was their duty to cause its character to be examined before ordering the improvement, and not to leave the character of the improvement to depend upon the subsequent examination by some other officer. The statute requires that before they shall pass any resolution for the construction of the improvements they shall cause "careful estimates of the costs and expenses thereof" to be furnished them by the city engineer. This necessarily includes an examination of the character of the ground in which the sewer is to be

constructed, and is to be a guide for their deliberation. It might be that upon such an examination, and in view of the extraordinary expense that would result therefrom, they would deem it best not to order the improvement, or would cause the construction of a different kind of sewer, or would enlarge the district upon which the expense should be laid. In any event they were not justified in divesting themselves of the responsibility that the statute has imposed upon them. A contract in terms like the present gives to the superintendent of streets the opportunity to make the cost of the improvement greater or less, according to his desire to favor or injure the contractor, vests him with an illegal discretion, tends to prepare the way for an unfair assessment, and opens wide the door to fraud and favoritism. If there is any profit in doing the work at the higher figure the natural effect of such a contract is to induce the contractor to put planking and concrete upon the whole line of work, while, if it is without profit, he would be disposed to consider the entire foundation stable. Under such a notice for proposals bidders can have no intelligent basis upon which to calculate the cost of the work, and all competition for doing the work is practically destroyed. The statute gives to the owners of the land to be assessed the right to take the contract at the price at which it was awarded to the successful bidder. This implies that the owners shall be definitely informed of the work which is to be done, and of the amount for which the assessment is to be made, in order that they may intelligently consider whether it will be to their advantage to take the contract; but if there are no *data* from which to determine the amount of material that will be required in doing the work, or if the cost thereof, to the extent of at least one-third, is to depend upon the volition of an officer who may or may not be friendly to them, they would naturally hesitate to place themselves in the position of depending upon his friendship or antagonism, and would thus fail to receive the advantage which the statute intended to confer upon them.

We cannot better express the result of upholding such a proceeding than in the words of the supreme court of Illinois in *Foss* v. *Chicago,* 56 Ill. 358: "Every such covert, irresponsible, discretionary power as here assumed is wholly inconsistent with a proper exercise of the high and sovereign power of taxation or eminent domain. It might be used, and it does not affect the principle whether it was so used or not, as a cover to an unfair estimate or assessment. It might be used as the instrument of favoritism in letting the contracts for the work. Some of the parties might be made to understand that the portions of the work already done were not done in a suitable manner, and that it would all have to be removed, while others might be informed that if they got the contract the portions already done would be considered as done in a suitable manner and be so much clear gain."

The right of the plaintiff to maintain the action is clearly established. The statute makes the assessment a lien upon her lands, and there is nothing upon the face of the assessment to show that the lien is not in all respects valid. If, by reason of matters outside of the assessment as it is recorded, this apparent lien may be shown not to be a valid encumbrance, the assessment constitutes a cloud upon her title which she is entitled to have removed; and although she can assert the same matters as a defense to any action for the enforcement of the assessment, she is not required to wait until such action may be brought, and, in the mean time, suffer the injury of having the title to her lands impaired by this apparent lien, but may herself invoke the equitable aid of the court to remove the cloud, and to enjoin the holder of the assessment from asserting any claim upon her lands by virtue thereof.

The judgment is reversed.

Garoutte, J., and Van Fleet, J., concurred.

Hearing in Bank denied.