[L. A. No. 2215. In Bank.—August 25, 1909.]

## W. H. McCALEB, Respondent, v. LOUIS G. DREYFUS, Appellant.

STREET IMPROVEMENT—SEWER WORK—VALIDITY OF CONTRACT—PRO-
VISION FOR CONCRETE FOUNDATION IN JUDGMENT OF CITY ENGINEER.
—A contract for sewer work entered into by a municipality, in
which the amount and character of material to be used is im-
possible of accurate predetermination, is not invalidated by reason
of a provision in the specifications that if, in the judgment of the
city engineer, it shall be necessary to form any portion of the
foundation of the sewer of concrete, said concrete shall be paid for
as extra work at the price per cubic yard mentioned in the contract.

ID.—DETERMINATION BY CITY ENGINEER OF NECESSITY FOR CONCRETE—
WORK TO BE DONE TO SATISFACTION OF STREET SUPERINTENDENT.—
Where the city engineer, under the charter of the city, is required
"to make all surface inspections and estimates required by the
council," a contract for sewer work which provides that such
officer, and not the superintendent of streets, should determine
whether any, and, if so, how much, concrete should be used for the
artificial foundation, is not thereby invalidated, if it further pro-
vides, in accordance with the requirement of the Street Improve-
ment Act, that the work shall be done under the direction and to
the satisfaction of the street superintendent.

ID.—VARIANCE BETWEEN SPECIFICATIONS AND PLANS—NUMBER OF
LAMP HOLES.—The fact that the specifications called for "a lamp
hole" to be placed at the point indicated on the plans and profile,
when the plans, profile, and resolution called for six lamp holes and
such number were in fact constructed, is not a sufficient variance
to deprive the council of jurisdiction to order the work.

ID.—POSTED NOTICES OF INTENTION—SIZE OF TYPE—RESOLUTION
PRINTED IN FULL.—The size of the type used in the posted notices
of intention cannot be complained of, if it was sufficiently legible;
nor can complaint be urged that such posted notices set out the
resolution of intention in full, instead of merely giving its sub-
stance, with a reference to the resolution for further particulars.

ID.—ACTION TO ENFORCE SEVERAL ASSESSMENTS AGAINST SAME
OWNER—ONLY ONE ATTORNEY'S FEE ALLOWABLE.—Where one de-

fendant is the owner of all the lots against which several street assessment liens are sought to be enforced in a single action, a single attorney's fee only can be recovered in such action.

APPEAL from a judgment of the Superior Court of Santa Barbara County and from an order refusing a new trial. Samuel E. Crow, Judge.

The facts are stated in the opinion of the court.

Canfield & Starbuck, for Appellant.

Henley C. Booth, for Respondent.

HENSHAW, J.—This is an action to foreclose liens upon an assessment for sewer work. Judgment passed for the plaintiff, and the defendant property-owner appeals.

1. The specifications for the work provided that "if, in the judgment of the city engineer, it shall be necessary to form any portion of said foundation (of the sewer) of concrete, said concrete shall be paid for as extra work at the price per cubic yard mentioned in the contract." This language forms the foundation of the principal attack made by appellant. He insists that, under the authority of *Bolton* v. *Gilleran*, 105 Cal. 244, [45 Am. St. Rep. 33, 38 Pac. 881], and *Perine* v. *Pasadena*, 116 Cal. 6, [47 Pac. 777], there is by these words conferred upon the city engineer the discretionary power at will to increase or decrease the cost of the work to the property-owner, and that a contract which so permits is void. The underlying principle in *Bolton* v. *Gilleran* is indubitably sound, and that is, that where the nature of the work permits a predetermination of its actual cost, such predetermination shall be made by the council in awarding the contract, and no improper discretionary power shall be left with the street superintendent or city engineer whereby such cost may either be increased to the injury of the property-owner, or diminished to the benefit of the contractor. This is usually possible, in that class of work known generally as street work. It is difficult, if not practically impossible, to enforce such a condition where the work is the construction of a sewer, or the driving of a tunnel. *Bolton* v. *Gilleran* has been seized upon by property-owners and used in every possible way to defeat

the just recovery of the contractor; until, finally, this court felt impelled to voice its protest against these efforts, in *Haughawout* v. *Raymond*, 148 Cal. 311, 312, [83 Pac. 53], where it is said: "Notwithstanding that the proceedings for street work and sewer work, like proceedings in taxation, are *in invitum*, and that therefore a fairly strict and accurate compliance with all the statutory requirements is necessary, this is the limit to which any court should be expected to go in disposing of the questions which are involved. The contractor who has honestly and substantially complied with his contract, of which the property-owners have received and will continue to receive the benefit, is quite as much entitled to the protection of the law as are the property-owners themselves, and, upon the other hand, an endeavor—even a successful endeavor—upon the part of the property-owners to defeat the just claims of such a contractor, by a resort to the extreme technicalities of the law, can, upon the whole, operate only to the disadvantage of the property-owners themselves, since it necessarily tends to increase the price at which any and all future contractors will be willing to engage in work, payment for which, after having been duly performed, is met by harassment and vexatious delay, with the prospect at the end of utter failure of recovery."

In awarding a contract for street work it is quite apparent, since the surface of the ground is exposed, that there may be an accurate predetermination of the amount and character of material to be used. It is unnecessary, therefore, to delegate any discretion in this matter to the street superintendent. Such was the condition in *Perine* v. *City of Pasadena*, 116 Cal. 6, [47 Pac. 777], (a street work case), where the specifications required that "the contractor shall put in such extra concrete as the superintendent of streets and the city engineer may require, and in such places and in such form as they may designate." It was easily susceptible of predetermination upon the part of the council whether any extra concrete was required at all, and, if so, the quantity and the place of use. This delegation, therefore, was held to be unreasonable. But where, as here, the work is the construction of a sewer, involving: 1. The digging of the trench, and 2. The placing of the sewer upon a durable foundation, it is apparent that but one of three courses can be pursued in the

letting of the contract. First, the course here pursued, where the possibility of uncovering soil unsuitable in its natural state for the foundation was anticipated and provision was made that where such soil was encountered a concrete foundation should be constructed. Indisputably, the determination as to whether or not a concrete foundation would be necessary must be vested in some one. Indisputably, also, the proper person to determine this was not the contractor, but the street superintendent or city engineer. For the concrete which should be so required, the specifications provided that payment should be made at a given price per cubic yard. It could at once be determined whether this price was reasonable or unreasonable, and while the quantity which might be used could not be predetermined, the cost was fixed with all of the exactness which the circumstances permitted. If such a method—a method which would unquestionably be adopted by any private individual contracting for the doing of such work—is not permitted to a city, it must result in the city adopting one or the other of the methods hereafter considered. Let us briefly state them, to see whether, under the most liberal view, it can be said that either of them presents any advantage to the property-owner over the method here adopted. One of these methods is that which appellant here insists upon, whereby a bid for a lump sum would be called for, thus enabling the property-owner to know the exact amount in dollars and cents which the work is to cost. By this method the discretionary power to say whether artificial foundations shall be constructed and where and to what extent, is still vested in the street superintendent. Obviously, under such circumstances, the contractor will bid a sum amply sufficient to protect him, should concrete foundations be called for along the whole route. The immediate and direct effect of such a plan would be to increase the cost of the work to the property-owner. Moreover, the door to fraud is not hereby closed, since it is equally open to the dishonest or incompetent street superintendent to refuse to call for foundations where foundations should be constructed, and thus materially enlarge the profits of the contractor. The only remaining method would be that whereby the contract for the work should be let in sections; a contract first let for the construction of the sewer trench, and then, with the land exposed, a subse-

quent contract let for the erection of the sewer, with proper foundations, where the disclosed under-soil showed that they were necessary. Can it for a moment be said that this method (even if permissible) would be to the benefit of the property-owner? It would mean an interminable prolongation of the work and a serious detriment to the use of the property while the work was in progress, and it is not to be supposed that the letting of the two separate contracts would be had at so advantageous a figure as would be the letting of a single contract for the whole work. It seems to us plain that the first method—that actually adopted by the city— is not only the method which would be adopted by a prudent person in awarding such a contract, but is the one that best protects the property-owner, and enables the work to be quickly and advantageously done at the lowest price. Official duty it is presumed will be performed, and we cannot perceive that, under this method, the property-owner will suffer at the hands of an iniquitous street superintendent, when every foot of the work and every order which the street superintendent may give are carefully watched and open to public inspection. Thus we find in *Haughawout* v. *Hubbard,* 131 Cal. 675, [63 Pac. 1078], (a sewer case), a specification upheld which declares that "when the ground does not afford a sufficiently solid foundation, the contractor shall excavate the trench to such increased depth as the street superintendent may decide to be necessary, and shall then bring it up to the required level and form with such material and in such manner as the street superintendent may direct." So in *Banaz* v. *Smith,* 113 Cal. 102, [65 Pac. 309], (a sewer case), it is said, discussing the same subject: "For instance, when the ground is wet, the soft earth is to be removed and gravel filled in; but the specifications do not determine the amount of wet, soft ground to be removed, or the quantity of gravel required to fill the excavation. It is not left to the street superintendent to say how much shall be done in any case. The contractor must do the work as required by his contract, and the street superintendent cannot accept less or require more." In *Belser* v. *Allman,* 134 Cal. 399, [66 Pac. 492], likewise a sewer case, a specification was upheld which declared that "under so much of said sewer as is to be constructed of brick and concrete, wherever the natural foundation is soft, spongy or springy,

such natural foundation shall be removed down to a firm and solid natural foundation, and instead of the removed material there shall be placed and constructed a firm and durable foundation of broken rock and concrete," etc. Here, while in terms the discretion to say where such natural material should be removed and replaced by concrete is not expressly conferred upon the street superintendent, it is not to be doubted that the control of the matter was in fact and in law vested in him. And in *Chase* v. *Scheerer*, 136 Cal. 248, [68 Pac. 768], considering the nature of the work imposed by sewer construction, where the specifications declared that the contractor should excavate the trench to such increased depth as the street superintendent may decide to be necessary, it is said: "It would be practicably impossible for the city council to burrow into the ground all along the line of the contemplated sewer, to see if the ground formed a sufficient foundation for the trench of the sewer." It is held, therefore, that the specification here under consideration, with its delegation of authority to the city engineer is reasonable and valid, and if it shall be considered that this view is in direct conflict with that expressed in *Bolton* v. *Gilleran*, 105 Cal. 244, [45 Am. St. Rep. 33, 38 Pac. 881], it must suffice to say that to this extent *Bolton* v. *Gilleran* is overruled.

2. Objection is made that the specifications provided that the city engineer, and not the superintendent of streets, should determine whether any, and, if so, how much, concrete should be used for the artificial foundation. But the contract provides that the work shall be done under the direction and to the satisfaction of the street superintendent, thus following the provisions of the Vrooman Act, and the city engineer, under charter amendment No. 7 of the charter of Santa Barbara (Stats. 1905, p. 937), is required "to make all surface inspections and estimates required by the council." It was therefore not improper to delegate this discretion to the city engineer. After the exercise of the city engineer's discretion in the matter, the work must still be inspected and approved and the assessment issued by the street superintendent.

3. Under the views above expressed it matters not that the court refused to strike out the allegation of the complaint to the effect that no extra concrete for foundation was in fact used.

CLVI Cal.—14

4. The specifications called for "a lamp hole to be placed at the point indicated on plans and profile." The plans, profile and resolution called for six lamp holes, and these lamp holes were in fact constructed. We cannot agree with counsel that this trifling imperfection in the use of the singular for the plural, by which, with the reference to the plans, no one could be misled, produces such an inconsistency as to deprive the council of jurisdiction to order the work.

5. It is complained that the posted notices of intention were not such as the law contemplates. Herein it is not contended that they did not contain all that the law required, but the somewhat singular contention is made that they contain more than the law required, in that the resolution of intention was printed in full, instead of being given in substance, with a reference to the resolution "for further particulars." Something also is urged as to the smallness of the type in which the body of the notice was printed.

A copy of the notice is inserted in the transcript. It is sufficiently legible, and the property-owner cannot be heard to complain with justness because the notice itself conveys to him more information than the law requires that it should.

Defendant was the owner of all of the lots against which the liens were sought to be enforced in a single action. While the method of procedure is permissible under section 12 of the Vrooman Act, yet a single attorney's fee only can be recovered in such an action. (*Hughes* v. *Alsip*, 112 Cal. 587, [44 Pac. 1027].)

The judgment is modified by striking therefrom all but one award for attorney's fees and costs, and, as so modified, the judgment and the order appealed from will stand affirmed.

Shaw, J., Lorigan, J., Angellotti, J., Sloss, J., Melvin, J., and Beatty, C. J., concurred.

Rehearing denied.