[Civ. No. 1014.   Third Appellate District.—January 3, 1913.]

## THE BARBER ASPHALT PAVING COMPANY, Appellant, v. JULIUS A. CRIST et al., Respondents.

STREET IMPROVEMENT UNDER VROOMAN ACT—REPAVING OF STREET-CROSSING—RESOLUTION OF INTENTION NOT EXPRESSING MATERIALS —VALIDITY.—A resolution of intention for the grading and paving of a street under the Vrooman Act, which excepts the present paving of a street-crossing, and requires such street-crossing to be repaved, is not rendered invalid, in failing to describe the materials with which such street-crossing should be repaved, it being fairly inferable that the crossing, being a part of the street to be paved, was to be repaved with the same materials as the rest of the street.   The street was to be improved for a specified length, and the improvement in mind was an entire piece of work.

ID.—PROCEEDINGS IN INVITUM—CLEARNESS OF WORK—FAIR COMPLIANCE WITH LAW ESSENTIAL—LOSS OR PROTECTION OF CONTRACTOR. The proceedings for a street improvement are *in invitum*, and the resolution of intention must describe the work to be done with sufficient clearness, and there must be a fairly strict and accurate compliance with all the statutory requirements, else the contractor must lose, however good his faith may be.   But if the contractor has honestly and faithfully complied with his contract, and there is no substantial defect in the proceedings, he is entitled to the protection of the law, as much so as are the property owners who have received the benefit of his work.

ID.—CONSTRUCTION OF "BASALT BLOCK GUTTERS"—WIDTH AND DEPTH. Where the resolution of the council declared its intention to order the construction of "basalt block gutters, four feet wide, upon a concrete foundation, six inches thick," the contention that there

21 Cal. App.—1          (1)

was an entire failure to fix the depth or thickness of the gutters is untenable, since the "basalt block," as applied to the depth of the gutters, means "six inches" *plus* the "basalt blocks," which reasonably imply blocks of sufficient size for the purposes intended. "Basalt" is defined to mean a "dark, hard species of marble," "a very tough and heavy rock, such as is used in macadamizing roads."

ID.—ACTION TO ENFORCE SEVERAL STREET ASSESSMENTS—JOINDER OF OWNERS IN COMMON OF ALL LOTS IN SUIT.—It having been settled that a defendant who is the owner of all the lots in suit may be joined in a single action to enforce the lien, no difference is perceivable where the single action is brought against three owners in common of all the lots in suit.

APPEAL from a judgment of the Superior Court of Alameda County.    William H. Waste, Judge.

The facts are stated in the opinion of the court.

Cooper, Gray & Cooper, for Appellant.

Johnson & Shaw, for Respondents.

CHIPMAN, P. J.—This is an action to foreclose a lien claimed for street work done in the city of Oakland by appellant under the so-called Vrooman Act.

A demurrer was interposed to the amended complaint on two grounds: 1. For insufficiency of facts, and, 2. That several causes of action have been improperly united in this: That causes of action to foreclose liens against twelve separate and distinct parcels of land have been improperly united.

The demurrer was sustained and judgment passed for defendants.    Plaintiff appeals from this judgment.

In paragraph V of the amended complaint it is alleged that, on September 4, 1906, the city council of the city of Oakland "duly made and passed a resolution, No. 31,323, declaring its intention to order the work and improvement mentioned in paragraph VI of this amended complaint to be done at said city and determining and declaring that said work and improvement was of more than local or ordinary public benefit and would affect and benefit the lands and district hereinafter described" and that the costs of said work "should be assessed upon said lands and district, which district is . . . described as follows:" (Description follows.)    It is also

alleged that said resolution of intention and the superintendent's notice of the passage thereof were published as by the said resolution provided.

In paragraph VI it is alleged that, on December 20, 1906, the city council "duly made and passed its resolution No. 31,755, ordering the following street work to be done according to the specifications adopted by said council on October 22, 1906, to wit: That East Fourteenth Street in said city, from the western line of Twenty-first Avenue to the eastern boundary line of the city of Oakland, be graded, curbed with granite with a backing of concrete and paved with asphalt in a layer two inches thick on a binder course one inch thick of asphalt and broken stone and a concrete foundation six inches thick; also that basalt block gutters, four feet wide, upon a concrete foundation six inches thick, be constructed thereon as follows, to wit: On the southern side from the center line of Twenty-second Avenue to the center line, produced, of Twenty-fourth Avenue, as said Twenty-fourth Avenue exists south of East Fourteenth Street, and on the northern side from the center line of Twenty-second Avenue to the center line, produced, of Twenty-fourth Avenue as said Twenty-fourth Avenue exists north of said East Fourteenth Street; also that the existing culverts in the crossing of Twenty-third Avenue be removed; excepting, however, from the above described work such portions as are required by law to be kept in order or repair by any person or company having railway tracks thereon; also excepting from said work the curbing on the southern side of East Fourteenth Street from the western line of Twenty-third Avenue to a point seventy-five feet easterly from the eastern line of said Twenty-third Avenue and also excepting the curbing on the northern side of said East Fourteenth Street from the eastern line of Twenty-third Avenue to a point one hundred seventeen feet westerly from the western line of said Twenty-third Avenue; also excepting from said work the grading, paving and guttering of the southern half of said East Fourteenth Street from the eastern line of Twenty-third Avenue to a line parallel with and distant seventy-five feet easterly from said eastern line of Twenty-third Avenue; also excepting from said work the paving of the crossing of Twenty-third Avenue, which crossing shall be repaved and also excepting the grad-

ing of the sidewalks from the western line of Twenty-first Avenue to the eastern boundary line of the city of Oakland.''

It will be observed that the plaintiff, in paragraph V of its complaint, does not set out in full the resolution of intention. Certain of its provisions are given and, among others, that it declared the intention of the council to be ''to order the work and improvement mentioned in paragraph VI of this amended complaint to be done.'' We think the complaint must be treated as if it alleged in express terms that the resolution of intention declared the work to be done as it is described in paragraph VI, and the question as to the sufficiency of the description of the work is thus distinctly raised. It is, therefore, contended by respondent that ''the resolution of intention did not name or describe the materials with which the crossing of Twenty-third Avenue should be repaved, and did not state the depth or thickness of the basalt block gutters.''

The street to be improved was East Fourteenth Street from the westerly line of Twenty-fourth Avenue to the easterly boundary line of the city. Between these points was the crossing of Twenty-third Avenue.

After describing the entire length of East Fourteenth Street, which was to be graded and paved and as in the resolution specifically described, we find, among other exceptions, the following: ''Also excepting from said work the paving of the crossing of Twenty-third Avenue, which crossing shall be repaved.'' Respondent's contention is that ''the council intended by this language that the crossing of East Fourteenth Street should not be paved in the same manner as the remainder of the street, but that the same should be paved with some other material not specified.'' Appellant's contention is that it is fairly inferable, from the provisions of the resolution, that the Twenty-third Avenue crossing, being a part of East Fourteenth Street, was to be repaved, with the same material as that used elsewhere on East Fourteenth Street. This was the construction put upon the resolution by the contractor and by the city authorities and all subsequent steps taken, as appears from the complaint, conformed thereto. The specifications for the work, prepared by the city engineer, the contract for its execution, the completion of the work, its acceptance by the superintendent of streets,

the payment by the city of its proportion of the cost of the work, all show that this particular crossing was to be repaved and was repaved the same as other parts of East Fourteenth Street. It is well settled that, the proceedings being *in invitum,* the resolution of intention must describe, with reasonable clearness, the work to be done, otherwise the contractor cannot recover, whatever his good faith may have been in doing the work or however much money he may have spent. Speaking of the rule laid down in *Bolton* v. *Gilleran,* 105 Cal. 244, [45 Am. St. Rep. 33, 38 Pac. 881], the supreme court said, in *McCaleb* v. *Dreyfus,* 156 Cal. 204, [103 Pac. 924] : "*Bolton* v. *Gilleran* has been seized upon by property owners and used in every possible way to defeat the just recovery of the contractor; until, finally, this court felt impelled to voice its protests against these efforts, in *Haughawout* v. *Raymond,* 148 Cal. 311, 312 [83 Pac. 53], where it said :

" 'Notwithstanding that the proceedings for street work and sewer work, like proceedings in taxation, are *in invitum,* and therefore a fairly strict and accurate compliance with all the statutory requirements is necessary, this is the limit to which any court should be expected to go in disposing of the questions which are involved. The contractor who has honestly and substantially complied with his contract of which the property owners have received and will continue to receive the benefit, is quite as much entitled to the protection of the law as are the property owners themselves, and, upon the other hand, an endeavor—even a successful endeavor—upon the part of the property owners to defeat the just claims of such a contractor, by a resort to the extreme technicalities of the law, can, upon the whole, operate only to the disadvantage of the property owners themselves, since it necessarily tends to increase the price at which any and all future contractors will be willing to engage in work, payment for which, after having been duly performed, is met by harrassment and vexatious delay, with the prospect at the end of utter failure of recovery.' "

It will be noticed that certain exceptions were made of work to be done on the curbing from certain points on Twenty-third Avenue and also certain paving and guttering for which no substitute was provided, i. e., that at these points

no work was to be done; and then follows the exception in question, to wit: "also excepting from said work the paving of the crossing of Twenty-third Avenue, which crossing shall be repaved," and this is followed by another exception of grading which was work taken out of the contract.

It is entirely clear that this crossing was to be repaved and the resolution specifically directed how East Fourteenth Street was to be paved. It seems to us reasonable to hold that wherever any part of that street was to be paved or repaved it was meant that the work was to conform to the specific description given for the paving. This street was to be improved for the entire length described and as specified, and the improvement in mind was an entire piece of work. It seems to us that a property owner observing by the resolution that this street was to be paved and this crossing repaved or, what would be the same—paved—he would reasonably conclude that the specifications as to paving the street would govern.

Respondents say in their brief: "It further appears from the resolution that the council declared its intention to order the construction of basalt block gutters, four feet wide, upon a concrete foundation six inches thick; that the council carefully defined the thickness or depth of the concrete foundation and the width of the gutters, but failed entirely to fix the depth or thickness of the gutters." It is argued that the depth or thickness of the gutters is as important to be stated as to fix the width, "because the cost may depend upon the depth as much as upon the width." But the depth is fixed if the size of the basalt blocks was understood, for they were to be laid upon a concrete foundation six inches thick and the depth would be six inches plus the basalt blocks. Webster defines basalt to be "a dark hard species of marble." Also—"It is a very tough and heavy rock, and is one of the best materials for macadamizing roads." The description was "basalt blocks"—not small broken pieces or fragments of basalt such as are used in macadamizing streets. The terms "basalt blocks" imply and would be understood by reasonably intelligent men to mean blocks of sufficient size for the purposes intended. If the resolution had specified brick instead of basalt blocks, it would be unreasonable to say that the contractor could not recover because the size of the

brick was not given.    (*Harney* v. *Heller,* 47 Cal. 15, 17.)
Had the resolution used the terms "cobble stones"—a mate-
rial frequently used for gutters—it would be unreasonable to
hold the proceedings invalid because the size of the cobble
stones was not given.    Yet cobble, as used, varies in size some-
what.    Appellant cites *Wells* v. *Wood,* 114 Cal. 255, [46 Pac.
96], and *Dowling* v. *Hibernia Savings & L. Soc.,* 143 Cal. 425,
[77 Pac. 141].    In the first of these cases the description read
that a certain street be graded and that "redwood curbs and
rock gutterways be laid thereon and that the roadway and
sidewalks thereof be macadamized."    The terms "rock gutter
ways" are not more definite than the terms "basalt blocks."
In that case the principal ground for a reversal was that
"the improvements were not properly or sufficiently described
in the resolution of intention."    The judgment was affirmed.
It is hardly conceivable that both court and counsel failed to
consider the sufficiency or insufficiency of the description
of the material used in the gutterways.    In *Schwiesau* v.
*Mahon,* 128 Cal. 114, 116, [60 Pac. 683, 684], it was said that,
by using the description, "rock gutterways be constructed in
the street, notice was given of the work and the materials to
be used."

In the Dowling case the resolution read: "That granite
curbs be laid on Henry Street . . . and that the roadway
thereof be paved with bituminous rock."    It is true that the
objection discussed in the opinion did not touch upon the
description of the material, and the question of its sufficiency
seems not to have been raised.    But it is not likely that the
point escaped the notice of counsel for appellant who doubt-
less considered it untenable and did not raise it.    The judg-
ment was affirmed.    We are unwilling to declare the proceed-
ings invalid because of the objection now being considered
and thus deprive the contractor of what is justly his due.

Finally, it is claimed that the several causes of action set
up in the complaint did not arise out of the "same transac-
tion,"    It is contended that each assessment upon the several
lots of land constituted a separate and distinct "transaction"
within the meaning of subdivision 8 of section 427 of the
Code of Civil Procedure, citing *Himmelmann* v. *Spanagel,* 39
Cal. 392.    While it was not necessary to the decision in that
case, it was nevertheless held that "the assessment is the

'transaction' within the meaning of section 47 of the Practice Act, [Stats. 1851, p. 57], out of which the cause of action must arise, which the defendants are authorized to set up as a counterclaim''; that "the owners of property adjacent to a street are not, in any sense, parties to the contract, for the improvement of a street, entered into with the superintendent of streets." The counterclaim in that case was for piling dirt on plaintiff's lot while doing the work on the street. The court said: "It is apparent that the alleged demand did not arise out of the assessment, nor, indeed, out of the proceedings upon which it is based, and, therefore, are (is) not available as a counterclaim. The acts occasioning the damages complained of were naked trespasses, and would not be held to arise out of the contract considered as the 'transaction' upon, or in respect to, which the action was brought.''

The causes of action which may be joined are defined in section 427 of the Code of Civil Procedure: ". . . 8. Claims arising out of the same transaction, or transactions connected with the same subject of action, and not included within one of the foregoing subdivisions of this section. The causes of action so united must all belong to one only of these classes, and must affect all the parties to the action, and not require different places of trial, and must be separately stated. . . .''

The complaint alleged "that defendants, Julius A. Crist, Frederick G. Crist, and Clara E. Crist were on the 16th day of October, 1907, (the date of the assessment, diagram, warrant and certificate of the city engineer) and still are the owners in common of that certain parcel of land situated in said assessment district and particularly described as follows'': (Then follows a description of a parcel of land which it is alleged "embraced those certain lots shown on said diagram and numbered thereon and on said assessment numbers.'' Then follow also the numbers of all the lots fronting on East Fourteenth Street and affected by the assessment.)

Section 12 of the Vrooman Act (Stats. 1885, p. 157) provides that "the contractor or his assignee may sue, in his own name, the owner of the land, lots or portions of lots assessed. . . .''

Appellant contends, with much force, that, under subdivision 8, section 427 of the Code of Civil Procedure, "the

'transaction' out of which the cause of action arises is the whole proceeding, commencing with the passage of the resolution of intention and ending with the recording of the assessment, warrant, diagram and the contractor's return,'' and this, because the assessment is of no effect unless the steps prescribed by the statute have been taken. We do not find it necessary to determine the point. In *McCaleb* v. *Dreyfus,* 156 Cal. 204, 210, [103 Pac. 924, 927], it is said: ''Defendant was the owner of all the lots against which the liens were sought to be enforced in a single action. While the method of procedure is admissible under section 12 of the Vrooman Act, yet a single attorney's fee only can be recovered in such an action. (*Hughes* v. *Alsip,* 112 Cal. 587, [44 Pac. 1027].)'' No difference is perceivable where the action is brought against a single owner of all the lots and where it is brought against three owners in common of all the lots, which is the case here.

The causes of action are not separately stated but the demurrer was not on this ground. (Code Civ. Proc., secs. 430, 431.)

The judgment is reversed with directions to overrule the demurrer.

Hart, J., and Burnett, J., concurred.