Argued September 9, affirmed September 21, rehearing denied October 19, 1915.

Opinion of September 21, 1915, modified November 16, 1915.

## MILLER v. PORTLAND.

(151 Pac. 728.)

**Municipal Corporations—Public Improvements—Betterment Assessment—Validity.**

1. A contract for a street improvement, giving the superintendent of streets power to increase or diminish its cost, after the contract has been made, by requiring a greater or less amount of material, as he shall determine, renders an assessment invalid.

**Municipal Corporations—Public Improvements—Betterment Assessment—Estimation of Work.**

2. To the validity of a street betterment assessment, it is not necessary that the preliminary estimate of the cost of making the improvement be precisely accurate, since a reasonable margin for miscalculation must be allowed.

**Municipal Corporations—Public Improvements—Betterment Assessment—Exceeding Estimate.**

3. Where the expense of completing a street improvement came to $30,844, instead of $13,652, as estimated, on account of unforeseen difficulty in foundation work for a retaining wall, such increase in the expenditure was so unreasonable that the assessment of the actual cost of the work was invalid.

From Multnomah: ROBERT G. MORROW, Judge.

Department 1.   Statement by MR. CHIEF JUSTICE MOORE.

This is a suit by Jessie A. Miller and others against the City of Portland, a municipal corporation, to en-

join the enforcement of a lien for a part of the expenses incurred in improving streets. The facts, as far as involved herein, are that the council of the City of Portland adopted a resolution, February 24, 1909, requiring the city engineer to prepare and file with the auditor plans and specifications for the improvement of Hall Street, from the east line of Fourteenth Street westerly to its intersection with Heights Terrace; for the improvement of the latter highway from such crossing to the west line of Sixteenth Street, near College Street; particularly to designate the kind of work to be done, and to make an estimate of the probable cost thereof. This requirement was complied with, and, as the streets proposed to be improved extended along the side of a hill, it was necessary to erect a retaining wall. In referring to such artificial embankment the specifications provided: ''The foundation for the wall shall be bedrock or ground satisfactory to the city engineer.'' Such detailed statement further set forth: ''All quantities are more or less.'' Blue-prints were also filed representing the wall, in one class of the work, as resting on a rock foundation, and in another as supported by earth, as it might be found necessary. The specifications contained a computed quantity of the work supposed to be required in front of each lot, the entire cost of which, including a charge for engineering, advertising and inspecting, was estimated at $13,652. The improvement was let to contractors for $12,905.83, but in doing the work it was discovered that a suitable foundation for the retaining wall could not be obtained, except at a much greater depth than had been contemplated, thereby increasing the entire expense of the work to $30,844. Liens for the proportionate parts of the latter sum were entered against the lots asserted to have been specifically benefited

by the improvement, whereupon a former suit was instituted to prevent the enforcement of such demands, and the decree rendered therein was conditionally affirmed: *Miller* v. *City of Portland,* 62 Or. 26 (123 Pac. 64). The mandate in that case having gone down, a reassessment of the premises for the entire expense of the improvement was undertaken, to prevent which this suit was brought, resulting in a decree imposing upon the lots of the several plaintiffs, except those that had executed bonds for the payment of their assessments, such a part of the sums so charged as $13,652, the original estimate of the cost of the improvement, bore to $30,844, the entire expense thereof, which separate amounts so determined the plaintiffs have been and are ready and willing to pay. From this decree the defendants appeal.

AFFIRMED.  REHEARING DENIED.

For appellants there was a brief over the names of *Mr. Walter P. La Roche,* City Attorney, and *Mr. Lyman E. Latourette,* Deputy City Attorney, with an oral argument by *Mr. Latourette.*

For respondents there was a brief over the names of *Mr. A. E. Clark, Mr. M. H. Clark* and *Mr. R. F. Peters,* with an oral argument by *Mr. A. E. Clark.*

Opinion by MR. CHIEF JUSTICE MOORE.

The testimony of the city engineer, who had charge of the improvement which was made, is to the effect that beneath the surface, along the line of the proposed retaining wall, shale rock was found, thereby rendering it impossible to ascertain, by drilling or boring into the earth, the depth required for a proper foundation, which could have been determined only by

digging a trench the entire length of the wall. The testimony, however, of the foreman who put up the concrete retaining wall, is in substance that at an expense of not more than $25 the depth of the foundation could have been established by making holes at different places along the line of the proposed improvement. From the study and experience of an engineer in such matters it must be presumed that his testimony outweighs that of a man who is skilled in the proper use of cement.

The evidence shows that the engineer's estimate of the probable cost of the improvement contained a detailed statement of the kind of work to be performed, specifying, as far as involved herein, the number of cubic yards in each class, and also, as will be remembered, included a clause which reads: "All quantities are more or less." The city, having advertised for bids for making the improvement, received from the firm to whom the contract was awarded a proposal to do the work on the unit basis as to each item specified in the engineer's estimate, a few of which particulars, as set forth in the proposal, will be stated thus: Earth excavation, 2,065 cubic yards, at 75 cents, $1,548.75; concrete retaining wall, 341.8 cubic yards, at $11, $3,759.80; solid rock, 88 cubic yards, at $4, $352. These items, together with the others contained in the proposal, aggregated $12,905.83; that sum being an offer to do the work for $746.17 less than the estimate. When the work was completed, however, the city engineer certified to the common council that the contractors, in making the improvement according to the plans and specifications, had performed cubic yards of work as follows: Excavation, 4,384; concrete retaining wall, 1,591.5; and solid rock, 254. These items, designed as illustrations of the method pursued, together

with other particulars of the work, made the entire expense of the improvement $30,844.

1. Based upon this evidence, and assuming as true that the soil contained unseen detached rock, which precluded a predetermination of the required depth of the trench for the retaining wall and the extra cement work thereby necessitated, the question to be considered is whether or not, from an inspection of the clauses in the specifications, "the foundation for the wall shall be bedrock or ground satisfactory to the city engineer," and "all quantities are more or less," the plaintiffs were given such notice of the charges for extra work as to authorize the imposing of burdens upon their real property of more than 125 per cent in excess of the original estimate of the proposed cost, though no objection was made to the improvement until after it was completed.

"A contract for a street improvement which," says a text-writer, "gives to the superintendent of streets the power to increase or diminish the cost of improvement, after the contract has been entered into, by requiring a greater or less amount of material for its completion as he shall determine, renders the assessment invalid": Hamilton, Spec. Assess., § 447.

To the same effect, see, also, Dillon, Mun. Corp. (5 ed.), § 244; *City of Chicago* v. *Wilder,* 184 Ill. 397 (56 N. E. 395).

This rule is based on the legal principle that an agent cannot delegate his functions to a subagent, unless he is expressly authorized so to do; and as a municipal charter vests in a common council delegated power to determine the kind of improvement to be made, that legislative body cannot legally commit any part of such authority to another officer. Thus in *Bolton* v. *Gilleran,* 105 Cal. 244 (38 Pac. 881, 45 Am. St. Rep. 33), it was held that a resolution of the board

of supervisors of the city and county of San Francisco, authorizing the construction of sewers according to the plans and specifications prepared by the city engineer, which notice of intention declared that, if the soil were insufficient for a foundation, the earth should be removed to a sufficient depth and planks should be laid, the discretion to determine what planking should be used being left to the superintendent of streets, without any fixed rules to control his judgment, rendered the proceeding void.

In *Perine Contracting etc. Co.* v. *City of Pasadena,* 116 Cal. 6, 9 (47 Pac. 777, 778), a contract for the improvement of a street was let pursuant to specifications, a clause of which read:

"But the contractor shall put in such extra concrete as the superintendent of streets and the city engineer may require, and in such places and in such form as they may designate. For all such extra concrete the contractor shall be paid at a *pro rata* of contract price for the actual quantity laid."

With the bid certified checks were deposited, but, contending that the language last quoted rendered the agreement void, the contractor refused to perform the work, and commenced an action to recover the amount of the deposit; the checks having been cashed. It was held that the action would lie; the court saying:

"Here there is left to the superintendent of streets and the city engineer power to increase the cost of work to an indefinite extent. A discretion lodged in the board alone is sought to be devolved upon these officers, and all means are withheld from the property owner of determining what may to him be the ultimate cost of the finished work."

To the same effect, see, also, *Stansbury* v. *White,* 121 Cal. 433 (53 Pac. 940); *Chase* v. *Treasurer of Los Angeles,* 122 Cal. 540 (55 Pac. 414).

The doctrine thus announced was receded from in *McCaleb* v. *Dreyfus* 156 Cal. 204 (103 Pac. 924), where the specifications for the construction of a sewer provided that:

"If, in the judgment of the city engineer, it shall be necessary to form any portion of the foundation * * of concrete, said concrete shall be paid for as extra work at the price per cubic yard mentioned in the contract."

It was ruled that the excerpt last referred to did not invalidate the agreement, if the character of the ground where the sewer was to be laid was such that a reasonably accurate estimate of the probable quantity of material required to complete the work could not be made from an inspection of the surface of the earth at that place.

In *State* v. *Town of Guttenberg,* 38 N. J. Law, 419, the engineer's estimate of the probable cost of improving a street was $28,038.45. In doing the work, more rock was found in the grade than anticipated, necessitating a deeper excavation in order to secure an earth surface for the roadway, thereby increasing the expense to $35,854.13, which sum, with interest and incidental expenses, was augmented to $44,002.41, an increase of 56 per cent over the estimate, and it was held that such excess did not defeat the assessment. In that case no discretion appears to have been given to or vested in any subordinate officer. The assessment and the proceedings subsequent thereto, however, were set aside on the ground of a failure to give notice.

In *State* v. *Jersey City,* 58 N. J. Law, 144 (35 Atl. 950), a preliminary assessment of $20,336 was made for the proposed improvement of a street, the actual cost of which was $24,423.94, of which latter sum

$7,593.94 was imposed upon the city at large, and the assessment was upheld.

In *Ireland* v. *City of Rochester,* 51 Barb. (N. Y.) 414, an estimate of $25,980 was made for a street improvement, the actual cost of which was $3,319.92 in excess of that sum. In a suit to enjoin the enforcement of the entire demand, it was contended that, under a clause of the charter which provided that no contract should be let for making a public improvement at a price greater than the estimate thereof, no part of such excess could be legally charged against the property benefited; but it was held that the limitation applied only to work included in such calculation, and did not preclude the council from causing other work to be done in addition to that embraced in the estimate, if they found it necessary in order to complete the work undertaken. The judgment was reversed, however, on the ground of a want of notice.

2, 3. From an inspection of the specifications in the case at bar, the plaintiffs undoubtedly could have obtained some information that the cost of making the proposed improvement might possibly exceed the original estimate in a reasonable amount. The purpose to be subserved by requiring an engineer's estimate of the probable expense to be incurred in making a public improvement, the cost of which is to be assessed against the real property expected to be benefited thereby, is to give the owners of the land some reasonable information whereby they may be enabled to act intelligently, and either oppose or favor the proposed undertaking. It is not expected that an accurate estimate of the cost of making such an improvement can be predetermined, and hence a margin must necessarily be allowed in such cases. What excess will be regarded as unreasonable will not be de-

termined. When, however, the expense incurred in completing the work is more than 125 per cent above the original estimate, it is time to call a halt to such proceedings, even though shale rock is encountered beneath the surface.

The plaintiffs could have had no adequate notice that such a charge could reasonably be expected, and, this being so, the decree should be affirmed; and it is so ordered.          AFFIRMED. REHEARING DENIED.

MR. JUSTICE BEAN, MR. JUSTICE BENSON and MR. JUSTICE HARRIS concur.