Argued and submitted August 21, 2001, reversed and remanded on appeal; affirmed on cross-appeal August 28, 2002

Gordon R. MARTIN
and Gordon S. Martin, Jr.,
*Respondents - Cross-Appellants,*

*v.*

CITY OF TIGARD,
*Appellant - Cross-Respondent,*

*and*

WAREMART, INC.,
and Costco Wholesale Corporation,
*Defendants.*

C980646CV; A108582

52 P3d 1074

Charles E. Corrigan argued the cause for appellant - cross-respondent. With him on the briefs were Gary Firestone, and Ramis, Crew, Corrigan & Bachrach, LLP.

David J. Hunnicutt argued the cause for respondent - cross-appellant Gordon R. Martin. Douglas V. Van Dyk argued the cause for respondent - cross-appellant Gordon S. Martin, Jr. With David J. Hunnicutt on the reply brief was Edward H. Trompke.

Before Armstrong, Presiding Judge, and Edmonds* and Kistler, Judges.

EDMONDS, J.

---

* Edmonds, J., *vice* Van Hoomissen, S. J.

**EDMONDS, J.**

This writ of review proceeding under ORS 34.010 *et. seq.* involves the City of Tigard's assessment of costs for the construction of Dartmouth Street against landowners who will benefit from the construction. Two of the landowners, Gordon R. Martin, and Gordon S. Martin, Jr., challenged the assessment in a writ of review proceeding before the circuit court. The circuit court upheld the formation of the local improvement district and the city's authority to assess the costs. However, it ruled that the city was required to follow the procedure prescribed by ordinance for a "reassessment" and, having failed to do that, its assessment was invalid. The city appeals, and the Martins cross-appeal. We reverse on the appeal and affirm on the cross-appeal.

This case has a long history and is the most recent of multiple actions between these parties over the creation of the Dartmouth Local Improvement District (LID) and the construction of and payment for Dartmouth Street. In 1984, the City of Tigard enacted Resolution 84-14 and, after holding public hearings, adopted Ordinances 84-17 and 84-18 pursuant to the resolution. The purpose of Resolution 84-14 was to authorize the creation of a local improvement district and to facilitate the construction of an access road to a part of Tigard that was experiencing traffic problems. In ordinance 84-17, the city also made a preliminary assessment of costs against those properties that would be benefitted by the construction of the street. The preliminary assessment used the "zone method" of apportioning the amounts to be paid by each affected landowner. The Martins were among those landowners. The zone method would have required them to pay 26 percent of the project's costs, which were estimated at that time to be about $2 million. The Martins' estimated share, as shown in the assessment roll that was part of ordinance 84-18, was $515,000. In ordinance 84-18, the city directed the city Finance Director to "spread" the assessments as shown in Exhibit A of the ordinance, to record the assessments in the city's lien docket, to notify each property owner of the assessment, and to provide applications for deferred payments of the assessment liens. The Martins challenged the formation of the LID (ordinances 84-14 and 84-17) and the

assessment (ordinance 84-18). In *Martin v. City of Tigard,* 78 Or App 181, 714 P2d 1115 (1986) (*Martin I*), this court held that the LID was lawfully formed but ruled that a portion of the planned improvement was not within the legal boundaries of the LID, that the assessment could not include the costs of constructing that portion of the improvement, and that the assessment was therefore void. We noted that, under ORS 223.410, "[w]hen a defect in a LID assessment occurs, the city council may reassess for up to the full cost of the improvement within the district." *Martin I,* 78 Or App at 182.

After remand, the city held additional public hearings and then enacted a new ordinance 88-08. In that ordinance, the city expressly incorporated ordinance 84-17, acknowledging that the ordinance had to be revised pursuant to our decision in *Martin I.* It then readopted the zone method of assessing costs. However, the city decided to wait until the project was completed to make a final assessment based on actual costs, rather than making a preassessment based on estimates.[1]

In 1994, the city completed the construction of Dartmouth Street. Negotiations began among the affected landowners to determine the method by which the costs should be allocated. Those negotiations continued from late 1994 until 1996 but ultimately were unsuccessful. The city then retained a private independent engineer to review all of the proposed assessment plans and to make a recommendation as to how the costs should be allocated among the landowners.

The engineer, Harper Righellis, issued a report in March 1997 (the Righellis Report). The report discussed each of the methods proposed by the landowners and concluded that the zone method did "not appear to equitably distribute costs based on benefit." The report recommended an assessment formula that focused on the net area of development, including an adjustment for the anticipated traffic that would be generated by the various properties. The method

---

[1] Additional litigation arose out of the enactment of ordinance 88-08. *See Martin v. City of Tigard,* 17 Or LUBA 16 (1989); *Martin v. City of Tigard,* 101 Or App 676, 792 P2d 117 (1990), *rev den* 311 Or 60 (1991); *Martin v. Dept. of Transportation,* 122 Or App 271, 857 P2d 225 (1993).

proposed by the Righellis Report would impose 43 percent of the project's costs on the Martins. Thereafter, the city enacted ordinance 98-12, which adopted the Righellis Report's method of apportioning the assessment.[2] The city determined that the total project costs amounted to $4,576,387 instead of the $1,995,000 estimated in 1984. The city proposed to make a final assessment of $1,950,000 against the Martins, and the Martins challenged ordinance 98-12 in circuit court in this proceeding.

After holding a hearing on the Martins' challenge, the circuit court ruled, in part:

"The real crux of the issue is what is the Ordinance 88-08 really—what does it really do—what did it attempt to accomplish. As I wrote down on my notes following the initial reading listing arguments today, was it just a change as to *when* you're going to assess the costs? If it's just a change of when you're going to assess the costs, you have one resolution. If it's *when* you're going to assess the costs *and how* you're going to assess the costs, it's another decision or another conclusion to be reached.

"You have to look at the entire ordinance, not this piece or that piece * * * and in reading the entire ordinance, 88-08, I believe it's the first or the former question, that's answered. The change was when you're going to make the assessment. You're going to go from a preassessment to a 'we're going to wait until we know what it all costs and then we're going to assess it to you.' So the 88-08 ordinance said, 'We're going to wait until the end. And we're going to make some fine tuning and some adjustments that may be necessary. But we're going to wait until the end to assess the costs.' That didn't change how you will assess the costs. I think that's a fair and reasonable reading of the ordinance. * * * Everybody was operating under that assumption.

"* * * * *

"When you come to 1998 and suddenly not only have we changed when you're going to assess, we all agree it's going to happen at the end, but suddenly you change the method

---

[2] The court used the phrase "method of assessment" in its ruling to refer to the method of apportioning the assessment among the landowners. We will also use that phrase.

of assessment. That you can't do at that stage in the proceedings. The LID is valid. There's nothing wrong with the LID. There's nothing wrong in changing when you're going to make the assessment, whether you were going to calculate at the beginning or at the end or in the middle, or sometime in between, you're going to make it at the end—that part is okay. But what is not okay is the change for the zone method to whatever the name the people are using for the second method * * * charge everybody method. You can't make that change unless the city council finds it essential and do so. And they didn't make that finding, that I can find anywhere. So without that finding, the only method that could be used is the zone method." (Emphasis added.)

Pursuant to its findings, the circuit court entered judgment for the Martins. The judgment recites, in part:

"The Court further finds that the assessment imposed in 1998 was a reassessment and concludes that the City therefore could only change the method of assessment if it found that the change was essential to secure an equitable assessment. The Court further finds that the City did not make that finding.

"* * * * *

"Now, therefore, IT IS HEREBY ADJUDGED:

"1.   The Dartmouth LID was properly and validly formed and its nature and character have not changed. The total cost as determined by the City may be spread among those benefitting from the local improvements, including the Martins. * * *

"2.   City of Tigard Ordinance No. 98-12 is ineffective to the extent it imposes an assessment on Petitioners and/or their property because the City of Tigard failed to make a finding that a change in the method of assessment was essential to secure an equitable assessment. On remand, the City must either use the original assessment method as to Petitioners or make the required finding."

The City of Tigard appeals and makes two assignments of error. It argues, (1) "The circuit court erred by applying reassessment standards to an original final assessment that was not subject to the reassessment standards[,]" and (2) "Even if the assessment was a reassessment, the circuit court erred by holding that the reassessment standards

had not been met." The threshold issue presented by the city's appeal is whether it was authorized by its ordinances to make a "new assessment" and thus avoid the procedural requirements of a "reassessment." When the city makes a "reassessment," it is required to engage in an exercise of its judgment to determine whether a change in the method of the assessment is "essential to secure an equitable assessment." ORS 223.415(3); Tigard Municipal Code (TMC) 13.04.070(e)(2)(D).[3] As the trial court pointed out, the city did not expressly make such a determination. *See* Ordinance 98-12, finding 13. We review the trial court's ruling as a matter of law.

Apparently, the trial court reasoned that the city's change in the method of apportionment in Ordinance 98-12 required it to follow the procedures established by TMC 13.04.070(e)(2) for a reassessment. Our review of the record indicates that, after remand, the city first corrected the defects that we identified in *Martin I* by proceeding under TMC 13.04.055.[4] *See* ordinance 88-08. Pursuant to that provision, the hearing that led to ordinance 88-08 allowed the opportunity for notice and public comment on the changes made in response to our decision in *Martin I*. At that point in the proceedings, after correcting the identified flaws, the city was faced with a choice. TMC 13.04.070(e)(1) provides, in part, that "the council may make a new assessment or a reassessment in the manner provided by this subsection when: * * * (B) All or a part of any assessment has been or is declared void or set aside for any reason or its enforcement is refused by a court having jurisdiction." The city could have proceeded with either a new assessment under TMC 13.04.060(c) or a reassessment under TMC 13.04.070(e)(4).

---

[3] The TMC also requires the giving of additional notice and opportunity for remonstrances if the "reassessment" increases the amount of assessment to be imposed against any affected property. TMC 13.04.070(e)(4)(G).

[4] TMC 13.04.055 provides, in part:

"When city council deems it in the ɫ       nterest of the public, or when a material defect in the preliminary plans ɛ       pecifications of the local improvement district has been found, a public heɿ       ɟ on the final plans and specifications may be called. The council may cuᴜ       ᴣefects, or delete portions of the plan which have been declared void or seɼ       ᴗde for any reason, and make necessary additions to the information in subɛ       ᴐn (b)(1) of section 13.04.030, the preliminary engineer's report."

In general, the new assessment procedure carries with it the more stringent procedural requirements of notice and the opportunity to object. In contrast, the reassessment procedure provides for a more abbreviated procedure but authorizes the council to "adopt a different plan of apportioning benefits * * * [only] when in its judgment it is essential to secure an equitable assessment." TMC 13.04.070(e)(2)(D). Our review of the record indicates that the city elected to make a new assessment under TMC 13.04.060(c), as shown by ordinance 98-12, finding 13, rather than a reassessment under TMC 13.04.070(e)(4). It subsequently followed the requirements of TMC 13.04.060(c) concerning public hearing and notice.

■     Unlike the trial court, we perceive nothing in the controlling ordinances that required the city to follow the reassessment procedures in the event that it desired to make a change in the method of apportioning the assessment. The ordinances are silent on that issue, and, if we affirmed the trial court, we would be adding language that is not in the ordinances. *Cf.* ORS 174.010.[5] On its face, TMC 13.04.070(e)(1) granted authority to the city to make an election, and the city expressly opted to make a new assessment. It followed all of the required procedures for doing so under TMC 13.04.060. Consequently, the trial court erred when it held that the city was required to follow the procedures of TMC 13.04.070(e)(2)(D).

The Martins cross-appeal and make two assignments of error. First, they contend that ordinance 98-12 changed the fundamental nature and character of the LID; they assert that the city, in essence, created a new LID without allowing for public comment, which in their view deprived them of an opportunity to remonstrate against the formation of a "new and different LID." They rely on two cases: *Heritage Square Dev. v. City of Sandy*, 58 Or App 485, 648 P2d 1317, *rev den* 293 Or 653 (1982), and *Miller v. Portland*, 78 Or 165, 151 P 728 (1915).

---

[5] ORS 174.010 provides, in part:

"In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted[.]"

In *Miller*, the improvement required the excavation of land and the building of a retaining wall. The project description contemplated that the wall would be built on bedrock, but, after the excavation began, it became apparent that the rock was shale. The project's costs therefore increased by 125 percent above the estimate because additional excavation was required. The Supreme Court held that "[t]he plaintiffs could have had no adequate notice that such a charge could reasonably be expected," and it affirmed the decree enjoining the enforcement of the lien for a part of the cost against the plaintiffs. *Miller*, 78 Or at 173. In *Heritage Square Dev.*, the municipality split the initially approved LID into two LIDs. It also reduced by half the number of parking spaces made available through the improvement and tripled the total cost. The goal of the project had been to provide ample parking for the customers of the landowners who were affected by the original LID. The city provided no opportunity to remonstrate against the splitting of the LID. We concluded that the municipality's changes to the LID made the project "of a character substantially different in size, cost and benefit (both as to the parties benefited and as to value)." *Heritage Square Dev.*, 58 Or App at 493. As a result, the parties had been denied an opportunity to remonstrate against the formation of the LID as it was restructured. We explained that, "when reassessment provisions fail to afford substantial rights equivalent to those mandated at each stage of the original proceeding to create an LID and to assess its cost, the city must repeat the process from the point of the first defeat that rendered the assessment void." *Heritage Square Dev.*, 58 Or App at 495-96.

■ We disagree with the Martins that the fundamental nature and character of the LID in this case has changed in the way that the LIDs were substantially modified in *Miller* and in *Heritage Square Dev.* Here, the general nature, boundaries and purpose of the improvement remained the same. The cost increased in significant part because of the passage of time and multiple lawsuits to which the Martins were parties. We also disagree with the Martins' argument that *Miller* creates a *per se* rule that amended cost increases of 125 percent will always invalidate a LID. The *Miller* court itself disavowed such a *per se* rule when it said, "What excess

will be regarded as unreasonable will not be determined [by this court]. When, however, the expense incurred in completing the work is more than 125 per cent above the original estimate, it is time to call a halt to such proceedings." 78 Or at 172-73. The fact that the *Miller* court found a 125 percent increase in cost unreasonable under the circumstances in that case does not answer the question in this case, especially in light of the conflicts between the parties. We conclude that the changes in the cost of the LID in this case are not so substantial or surprising as to constitute the formation of a "new LID" and that the trial court did not err in holding that the LID was validly formed.

In their second cross-assignment of error, the Martins contend that the trial court erred when it ruled that the Oregon Tax Court had exclusive jurisdiction over an action that the Martins brought and that was pending before the Tax Court at the same time that this action was pending. In the Tax Court action, the Martins argued, among other things, that the amount of the assessment was invalid because it constituted a tax rather than a special assessment and thus was subject to constitutional limitations on the amount of taxation under Article XI, section 11, of the Oregon Constitution.[6] The Martins incorporated their Tax Court pleading into their pleading in this case. Their pleading says, in part, that, "[I]f the tax court determines that it has jurisdiction of the claims described * * *, we will withdraw this * * * claim for relief." Thereafter, the Tax Court issued its opinion in February 1999. *Martin v. City of Tigard*, 14 OTR 517 (1999). In that opinion, the court characterized the Martins' Article XI, section 11b, challenge as a claim "directed at the merits of the assessments rather than

---

[6] Article XI, section 11, imposes limitations on the amount of tax that can be imposed on real property. It also provides that amounts of money imposed against landowners as "assessments for local improvements" are not taxes and thus are not subject to the limitations. It defines "local improvements" and provides that a "capital construction project undertaken by a governmental unit" will be exempt from the limitations on taxation if the project meets three requirements. A local improvement will be exempt from the taxation limitations if (1) it provides a special benefit only to specific properties; (2) it assesses the costs against those properties, in a single assessment, upon completion of the project; and (3) it allows the payments to be spread over at least ten years. The Martins sought to have the city's imposition of costs against them characterized as a tax, so that it would be subject to the above limitations.

whether their characteristics caused them to be subject to the effect of section 11b." It said that, "For special assessments, the court determines whether it is for a local improvement as defined by section 11b. If it is, that is the end of the inquiry." It then expressly declined jurisdiction over the issue as it had characterized it.[7] In October 1999, the trial court therefore dismissed the Martins' Article XI, section 11b, challenge to the assessment.

■　　　The Martins argue to us that "[t]he trial court should be directed to accept jurisdiction of the issues arising under Article XI, section [11b], in a manner consistent with the determinations of the Oregon Supreme Court." However, the Martins cannot avoid a ruling in the Tax Court that is adverse to them by making the same claim in the circuit court and this court. The Tax Court decision implicitly held that the special assessment involved in this case was a local improvement or, in other words, was not a tax. Otherwise it would have concluded that it had jurisdiction to decide the issue. The Tax Court is vested with the exclusive authority to determine whether a special assessment implicates Article XI, section 11b. ORS 305.530(1); *see Ester v. City of Monmouth*, 322 Or 1, 903 P2d 344 (1995). Its decision has preclusive effect as to the issue of whether the assessment constituted a tax. *See Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 103-04, 862 P2d 1293 (1993) (preclusive effect of prior administrative determination). Accordingly, the trial court was correct when it dismissed the Martins' claim that the assessment violated Article XI, section 11b.

In summary, the trial court erred when it held that the final assessment made in ordinance 98-12 was invalid. Its decision to that effect is reversed. The trial court did not err in holding that ordinance 98-12 did not change the nature and character of the LID, or in holding that it could not address the implications of Article XI, section 11b, on the project.

Reversed and remanded on appeal; affirmed on cross-appeal.

---

[7] The Martins have appealed that decision to the Supreme Court, and the Supreme Court is holding its decision in abeyance pending our decision in this case.